Colonial Rubber Co., Inc. v. Commissioner.
Colonial Rubber Co. v. Commissioner
Docket No. 26461.
United States Tax Court
1951 Tax Ct. Memo LEXIS 242; 10 T.C.M. (CCH) 434; T.C.M. (RIA) 51138; May 8, 1951
Arthur Gottlieb, Esq., for the petitioner. William C. W. Haynes, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies in income tax, declared value excess profits tax, and excess profits tax, plus 50 per cent penalties thereon under section 293 (b) of the Code for the fiscal year ending July 31, 1944, plus *243 a further penalty of 25 per cent of the deficiency in excess profits tax under section 291 (a) of the Code, as follows: 25%
50%
Deficiency
Penalty
Penalty
Income tax
$ 723.05
$ 361.53
Declared value
excess profits
tax
573.71
286.86
Excess profits tax
18,515.86
$4,628.97
9,257.93
Totals
$19,812.62
$4,628.97
$9,906.32
The petitioner has admitted by its pleadings that for the fiscal year ended July 31, 1944, it understated its gross income from sales in its income tax and declared value excess profits tax return for that fiscal year in the amount of $22,435.03; that it made sales during the said fiscal year to various customers for the said gross amount of $22,435.03, which it failed to record in its books or in the aforesaid tax return; that the omission from gross income in the amount of $22,435.03 in the aforesaid tax return was due to fraud with intent to evade tax; that receipts in the amount of $22,435.03 were deposited in the personal bank account of Benjamin Weisman, its manager, treasurer, and its sole stockholder after February of 1944; that by reason of the fraudulent omission of income in the amount of $22,435.03 from gross *244 income in all of its returns for the fiscal year ended July 31, 1944, part of each deficiency in income tax, declared value excess profits tax, and excess profits tax for said fiscal year is due to fraud with intent to evade tax; and that the 50 per cent penalties have been imposed properly, under section 293 (b) of the Internal Revenue Code. The petitioner admits, further, that it failed to file an excess profits tax return for the fiscal year ended July 31, 1944. The first question in issue is a question of fact, whether the petitioner made "side payments" for materials, in addition to the "ceiling" prices for such materials which were established under regulations of "O.P.A.," the Office of Price Administration, during the fiscal year ended July 31, 1944. The petitioner contends that it made such over-ceiling payments in the aggregate amount of $3,216.24 and has introduced evidence in support of its contention. The petitioner contends, further, that said overceiling payments for materials are includible in its total cost of materials and so as to be subtracted from its gross sales as a part of the cost of materials. The respondent has denied the inclusion *245 in the cost of materials of the alleged over-ceiling "side payments." If it is found as a fact that the petitioner made "side payments" for materials, the second question presented is whether said "side payments" can be included in the total cost of materials, in addition to the amounts paid for materials at the established O.P.A. ceiling price. The petitioner filed its income tax and declared value excess profits tax return with the collector for the district of Massachusetts. Findings of Fact The petitioner is a Massachusetts corporation having its place of business in Cambridge, Massachusetts It was organized in February of 1944 to take over the business of Cunningham Rubber Company. During the fiscal year ended July 31, 1944, it was engaged in the business of making rubber tire patches and reliners. For the purpose of making such commodities, it purchased scrap automobile tires, which were refabricated to separate the rubber from the fabric in the tires. The fabric was used to make blow-out tire patches and tire reliners, and the scrap rubber was sold to concerns which reclaimed rubber. The petitioner kept its books and made its returns on an accrual basis. During the *246 1944 fiscal year, Benjamin Weisman owned practically all of the stock of the petitioner and was an officer-treasurer of the petitioner, and he had charge of petitioner's books for about six months. Weisman established a business contact with a concern doing business under the name of West Side Battery and Lead Company (hereinafter called West Side) near or in Cambridge, which dealt in scrap tires. West Side became a source of supply of scrap tires for petitioner. The petitioner's books contain records of the purchases of materials during the 1944 fiscal year from West Side at the O.P.A. ceiling prices of about $18 per ton, or about 18 or 19 cents per old tire. The records of the petitioner also show that payments of the O.P.A. prices of tires were made by checks made payable to the order of West Side. The aggregate amount of the checks given to West Side in the fiscal year 1944 for tires was $3,551.25. The petitioner, through Weisman, made cash "side payments" of amounts in excess of the established O.P.A. ceiling price, in addition to the O.P.A. prices, at the rate of about 11 cents extra per tire. Weisman's procedure was to make two payments to West Side for each transaction *247 of purchase; one payment was made by check of the petitioner made payable to West Side in the amount of the O.P.A. ceiling price; and the other payment was made by cash. Weisman obtained the cash for such use by drawing a check of petitioner made payable to "Cash." He cashed the check and handed the cash over to West Side's representative. The total amount of the cash "side payments" made during the fiscal year was $2,934.25. The following schedule shows the two classes of payments which were made to West Side during the fiscal year by petitioner through Weisman: Payments
Equaling
Payments Over
Date of
O.P.A.
O.P.A.
Check
Ceiling Price
Ceiling Price
2-17-44
$ 246.24
$ 209.76
2-24-44
222.43
189.47
3-22-44
364.50
280.50
4- 4-44
1,082.48
831.62
4-13-44
213.03
181.47
5- 3-44
238.30
203.00
5-20-44
385.88
328.72
6-16-44
547.88
427.72
7-31-44
250.51
281.99
$3,551.25
$2,934.25 In nearly every instance, the check made to "Cash" bore the same date as the check made payable to West Side, and in many instances the numbers of a "pair" of checks were either consecutive or close in sequence of numbers. Also, in nearly every instance, the *248 stub of the check made payable to "Cash" had a notation of "W.S.B." or "West Side Battery." Weisman knew what the established O.P.A. ceiling price was during petitioner's 1944 fiscal year for scrap tires; that it was $18 or $18.50 per ton; that the O.P.A. price per ton represented a price of 18 or 19 cents per tire; that extra "side payments" above 18 or 19 cents per tire were in violation of O.P.A. price control regulations; and that in paying West Side "side payments" above the O.P.A. price, he was violating the O.P.A. price control regulations. Ultimate Finding of Fact. During the fiscal year ended July 31, 1944, the petitioner paid to West Side cash "side payments," in addition to O.P.A. ceiling prices in connection with purchases of materials from West Side in the total amount of $2,934.25. The failure of the petitioner to file an excess profits tax return for its 1944 fiscal year was not due to reasonable cause but was due to wilful neglect. Opinion Issue 1. Upon the entire record, it has been found as a fact that the petitioner, through Benjamin Weisman, made cash, over-ceiling "side payments" to West Side during the 1944 fiscal year in the total amount of $2,934.25. *249 We make this finding of fact from the testimony of Weisman which is corroborated, after weighing all of the evidence which has been adduced, which includes the testimony of West Side's representative who denies having received any over-ceiling "side payments" from the petitioner or Weisman. The petitioner claimed, originally, that the payments above the O.P.A. ceiling prices total $4,184.76. At the trial, the petitioner claimed that a lesser amount, $3,216.24, was paid. The evidence shows that $2,934.25 was paid. Issue 2. The second question is whether the sum of $2,934.25 may be included in the cost of materials in computing the cost of goods sold for the purpose of arriving at the amount of the petitioner's gross profit from sales. The petitioner contends that the payments it made for materials which it purchased from West Side included cash "side payments," over and above the payment of the established O.P.A. ceiling prices, and, therefore, represent part of its cost of materials. The evidence shows that the over-ceiling payments were made in connection with the purchases of materials. This Court held in Lela Sullenger, 11 T.C. 1076 (1948), that where the evidence *250 shows that payments above O.P.A. ceiling prices are a part of the cost of goods which the taxpayer resells, such payments shall be included in the cost of goods sold in determining gross income. It was pointed out in the Sullenger case that inclusion of such costs in the total cost of goods sold does not constitute a deduction of such costs under section 23. The Sullenger case was decided upon the authority of United States v. Sullivan, 274 U.S. 259. The evidence in the Sullenger case showed that the taxpayer had made cash "side payments" above O.P.A. prices, as was done by the petitioner. The facts in this proceeding are substantially the same as in the Sullenger case. This Court has not been cited by the respondent to any better authority than United States v. Sullivan, supra, or to one which compels departing from the rule expressed in the Sullenger case. The respondent has made the same argument and cited substantially the same authorities here as he presented to this Court in the Sullenger case, which were rejected. It must be held, therefore, in this proceeding that the petitioner's costs of materials which were resold include over-ceiling payments *251 in the amount of $2,934.25. It should be stated, further, that there is no evidence in this proceeding that the petitioner or Weisman was required to make any payments to O.P.A., or was convicted and fined under the Emergency Price Control Act of 1942 (Title 50, App. U.S.C.A., Section 901, et seq.) on account of overceiling payments to West Side, and that in this proceeding no "penalties" for violation of O.P.A. regulations are involved. Cf. Jerry Rossman Corporation v. Commissioner, 175 Fed. (2d) 711 (C.A. 2, 1949); and Harry Sackstein, 14 T.C. 566. Decision will be entered under Rule 50.