## A. KINGSLEY FERGUSON, LOIS C. FERGUSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26482.    Promulgated May 31, 1951.

*Richard R. Hollington, Esq.*, for the petitioners.
*Thomas V. Lefevre, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* The petitioner advanced to Wood Products, Inc., $4,114.01 before incorporation and $24,297.64 after incorporation, and upon incorporation transferred to it assets valued at $3,931.26. The total, $32,342.91, the parties both treat as a bad debt which became worthless in 1947 and are in agreement that the question presented is whether it was an ordinary bad debt under section 23 (k) (1) of the Internal Revenue Code or a "nonbusiness debt" within the definition of section 23 (k) (4), and therefore the resulting loss should be treated as a short-term capital loss as therein provided. Section 23 (k) (1) and (4) of the Internal Revenue Code .[2]

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(k) BAD DEBTS.—
(1) GENERAL RULE.—Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a

The parties are in agreement also that the issue, as defined by the statute and regulations, is as to petitioner's trade or business in the year when the debt became worthless; and that consideration of earlier years is proper merely to determine the nature of such trade or business in 1947.

The petitioner's theory is, as repeatedly though variously expressed upon brief, that his primary trade or business since 1935 has been the promotion, organizing, financing, and operation of businesses in allied fields of wood construction and wood fabrication with the overall purpose of developing an organization for mass production of low-cost wooden housing. On brief he says that "throughout his career runs the single identifying thread—'mass production of low cost housing'." He makes no contention on brief that his business was that of Wood Products, Inc., or that of being president and general manager of that corporation, or of organizing, operating or financing the one corporation, Wood Products, Inc. On the contrary, he particularly contends he has "never asserted that Ferguson's business was acting as President and General Manager of Wood Products." This is a change of theory on the petitioner's part for, both in the sworn protest filed in this matter in 1949 and in the petition itself, petitioner's theory and contention was that he considered his position with Wood Products as his trade and business. We find both in protest and in petition the following language:

In December 1946, Mr. Ferguson, finding that he was unable to support his family upon the income he was receiving from Wood Products, Inc., became employed by the H. K. Ferguson Company. However, he continued as President and General Manager and devoted a large amount of his time to the business and affairs of Wood Products, Inc. and considered his position with said company as his trade and business. This he did until 1947, when Wood Products, Inc. was liquidated * * *.

In addition the protest recites that "Wood Products, Inc. was Mr. Ferguson's trade and business from 1944 to 1947 * * *." Nevertheless, since the petitioner now relies upon no business of being an officer of Wood Products, Inc., or that its business was his,[3] but takes a broader view, we proceed to examine the latter. The change of theory is significant.

---

security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.

* * * * * *

(4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

[3] On brief he states that he "has made no claim that he personally was making broom handles which was the corporate business."

The question here presented is one of fact in each particular case, as Regulations 111, section 29.23 (k)-6 states and the parties agree. We have found and set forth the facts in detail above, and they need not be repeated here. Upon study thereof, we come to the conclusion that the petitioner was not in the business for which he contends. The fact is that from May 1945 he was a salaried officer of Ferguson, a construction firm doing very large amounts of business under his management. His salary was $12,000 plus bonus, amounting altogether in 1947 to $24,500, and under his management the business increased from $6,000,000 to $75,000,000 and when he left there was on hand $135,000,000 in work. Fifty projects were under way on the average at all times. Though he did remain as president and general manager of Wood Products his activities in that regard were clearly incidental. Though a person may have more than one business, it is not petitioner's theory that he had, in Wood Products, another business but only that his promotion and management of Wood Products was a part of his over-all business of promoting and management in the low-cost housing field. The manufacture of implement handles, wooden crates and boxes—a business as above seen described by petitioner as "making broom handles"—is not seen as any real part of the promotion and organization "for mass production of low cost housing" which the petitioner argues is the single identifying thread, throughout his career. From the business of Wood Products, the protest recites, petitioner was unable to support his family; he reported no income therefrom in 1945, 1946, or 1947. We are unable to believe that in addition to his services to Ferguson Company he devoted to Wood Products such efforts as reasonably to permit inclusion thereof in his business. Although *Omaha National Bank* v. *Commissioner*, 183 F. 2d 899, involved loans made to protect previous investment the court points out in the discussion of *Washburn* v. *Commissioner*, 51 F. 2d 949, and *Snyder* v. *Commissioner*, 295 U. S. 134, the concept of the amount of time necessary to constitute a business. In the *Washburn* case it is noted the party gave his entire time, and in the *Snyder* case "the Supreme Court approved the rule that one who devotes the major portion of his time to speculating on the stock exchange may treat losses thus incurred as having been sustained in the course of a trade or business. In the present case the taxpayer neither alleged nor proved that he devoted a major portion of his time to the management of Charles Rosso, Inc." The court in the *Omaha National Bank* case goes on to say that it is unable to distinguish that case from *Burnet* v. *Clark*, 287 U. S. 410; *Dalton* v. *Bowers*, 287 U. S. 404; and other cases named. Yet the latter case, like this one, involved contentions of a broad view that the petitioner's business was a "complete, comprehensive enterprise of which the corporation was part. It was an instrumentality of the taxpayer's business"—Dalton was president and

treasurer of the corporation involved and controlled its affairs—much as is here contended; and in the *Clark* case the petitioner was a majority stockholder. and active head of the corporation involved and devoted himself largely to its affairs. He was also a member of three partnerships and owner of stock in a number of corporations. The court declined nevertheless to consider that loans by him to one of the corporations was a part of his business.

The *Dalton* and *Clark* cases, of course, do not involve section 23 (k) (4) but the parties appear to be in agreement that the test here is the same as under section 23 (e) (1), and Regulations 111, section 29.23 (k)-6 so provides.

Before passing from the *Omaha National Bank* case, we should note that this case, like that one, involves in part the protection of a loan made prior to incorporation; for of the $32,342.91 the petitioner had advanced $4,114.01 before.incorporation.

In pursuance of the theory that petitioner's business was in the low cost housing field and promotion and organization therein, he calls attention to such cases as *Vincent C. Campbell*, 11 T. C. 510, which he says is the one which comes closest to the facts here involved; and *Henry E. Sage*, 15 T. C. 299, to the general import that one can have a business of organizing, promoting and financing so many corporations or ventures as to constitute a business. We can not find on all of the facts here that this is such a case. Petitioner, contrary as above seen to his view in protest and petition that his business was his position with Wood Products, endeavors strenuously, with mass production of low cost housing as the "single identifying thread" throughout his career, to show his interest in that subject and that it constitutes a business with him. We are not convinced, and think that the idea—contrary to and not suggested in protest or petition—is greatly overworked; but assuming an interest by him in that subject it can not in the light of the facts be considered a business consuming such time, attention, and financing as under the cases permits debts to be considered as incurred in business. The criterion is obviously whether the occupation of the party involved so consists of expenditure of time, money, and effort as to constitute his business life. Though the expenditure of vast amounts of money is no doubt not necessary, the amount and custom of investing are obviously factors. We. can not reasonably consider as such investment of money, his advance of "some of the funds"—amount not shown—with which Westhill Colony was organized, his advance of his own personal expenses in obtaining the contract for the airfield at Walnut Ridge, or in unsuccessful efforts to obtain some contracts for Messrs. Oman in 1943; or his travel for the Omans "partly at his own expense" late in 1944 and early in 1945; likewise, the advance of money, in amounts not shown, to finance the industrial city proposition and a research

project on a product having possibilities as a low cost panel after Ferguson had dropped them. Not only are such expenditures so insufficiently proven as not to bear the weight of the large amounts definitely shown expended in the *Campbell* and *Sage* cases, but they are not shown to be in furtherance of any overall project of developing low cost housing, within the petitioner's theory. There is little similarity, in our view, between the history of the petitioner in his employment by others, particularly by Ferguson Company from May 1945 through the taxable year, to which employment it is clear that he devoted almost all of his time, and the devotion of time, effort and money by the petitioners in the *Sage* and *Campbell* cases and in *Foss* v. *Commissioner*, 75 F. 2d 326, also relied on by petitioner. They were engaged not in employment by others but in managing their resources as applied to various business efforts. The crucial fact in the *Campbell* case is that: "It was their [petitioners'] practice as a part of their business to advance to, or leave with, those corporations [12 in number] on open accounts money belonging to them in many different instances." The advancement here of petitioner's own expenses, at times only in part, is not comparable to the devotion of funds in the cases relied on by petitioner. The petitioner after 1943 never claimed deduction of any office expenses. Though maintenance of an office is not mentioned in the *Campbell* case it is, contrary to the petitioner's statement, shown in the *Sage* case; and clearly, we think, an office and the expense thereof are a logically important factor in examination of this question. *Foss* v. *Commissioner*, supra.

Westhill Colony had an office about 1937–1938 and about 1943 petitioner operated from his attorney's office in endeavoring, unsuccessfully, to obtain construction work for the Omans, and was advancing office expense; and since 1937 petitioner has worked "more or less continuously" with his attorney, from his office. We find no proof of payment of office rent by the petitioner at any time. The nearest approach is that he thought he was doing so in 1943. Taken with the various employments of petitioner by others, such lack of office and expense thereof is in marked contrast to those cases upholding the contention of the business of managing various corporate or other business enterprises, and tends to indicate to us that petitioner had no such broad business in addition to his employment.

On all of the evidence, we conclude and hold that petitioner was not engaged in the business claimed, the promotion, organizing, financing and operation of businesses in the fields of wood construction and fabrication with the purpose of mass production of low cost housing.

Since he disavows any contention that his business was that of president or general manager of Wood Products—with which we agree—there is no reason for any holding that the advances were deductible as expense of such a business, under cases such as *Com-*

*missioner* v. *People's-Pittsburgh Trust Co.*, 60 F. 2d 187, or *Ralph C. Holmes*, 37 B. T. A. 865. Petitioner, consistent with his position, does not cite or rely on them. It is to be noted also that neither case involved advances to the corporation involved.

We conclude and hold that the bad debt resulting from his advances to Wood Products was a nonbusiness debt within section 23 (k) (4) of the Internal Revenue Code.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TIETJENS, *J.*, dissenting: Contrary to the majority opinion, I think the finding should be that petitioner's advances, when made, were proximately related to his business of promoting, organizing, and financing Wood Products, Inc., and that he was still engaged in that business when the debt became worthless. Accordingly, the debt was a business bad debt.

I agree with the majority that the facts do not bear out the theory which petitioner stressed on brief, that his primary business was the promotion, etc. of businesses in the allied fields of wood construction and fabrication. Had that theory been substantiated, I have no doubt but that petitioner would have been entitled to deduct his loss. *Vincent C. Campbell*, 11 T. C. 510. I think a taxpayer can be engaged in the business of organizing, operating, and financing a *single* corporation as well as a number of corporations and that a taxpayer so engaged, as petitioner was here, should be entitled to the same bad debt treatment as the taxpayer who finances and promotes several corporations.

I respectfully dissent.

MURDOCK, *J.*, agrees with this dissent.