Fred R. Angevine v. Commissioner.
Angevine v. Commissioner
Docket No. 26105.
United States Tax Court
1951 Tax Ct. Memo LEXIS 64; 10 T.C.M. (CCH) 1028; T.C.M. (RIA) 51319; October 23, 1951
*64 Paul G. Reilly, Esq., and Francis R. Curry, Esq., for the petitioner. Thomas R. Charshee, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax of the petitioner for 1945 in the amount of $8,405.82. The only issue for decision is whether a debt in the amount of $120,426.10 which became worthless in 1945 was a business or non-business bad debt within the meaning of section 23 (k) of the Internal Revenue Code. Findings of Fact The petitioner was engaged in the practice of law from 1912 through 1945. His individual income tax return for 1945 was filed with the collector of internal revenue for the second district of New York. The petitioner, while on a vacation in Mexico in January, 1944, became acquainted with three people who were engaged in a shark fishing business as partners in Acapulco, Mexico. The livers of the sharks were extracted and sold for the vitamin "A" contained therein. The principal partnership assets were two shark fishing boats, a small laboratory, and an exclusive franchise to fish for sharks in a certain area. The partners wanted the petitioner *65 to bring some new money into the business so that it could be expanded. They agreed with the petitioner to form a Mexican corporation to carry on the business. The three partners were to receive two-thirds of the stock of the new corporation in exchange for the assets of the business and the petitioner was to receive the remaining one-third of the stock for cash. The petitioner went to Mexico City and there arranged for the formation of the corporation which was organized in February, 1944. He became president of the corporation and was to receive a salary out of the earnings of the corporation. One of the former partners was made general manager. The corporation began to conduct the business. The petitioner returned to Acapulco and began to familiarize himself with the business. He held several conferences with possible purchasers of the shark livers. He signed a contract for the construction of additional fishing boats. He obtained a registration card and an immigration permit from the Mexican Government which a foreigner doing business in that country had to have. He returned to the United States in March, 1944, and obtained an American passport for re-entry into Mexico. He *66 opened a bank account in the name of the corporation, established its credit rating with Dun and Bradstreet, and retained an accounting firm to open the books of the corporation. He conferred with the Mexican consulate. He acquired preference ratings from the United States Government for the manufacture and export of engines and other marine hardware to be used in fishing boats then under construction for the corporation, which equipment was not available in Mexico at that time. He conferred with several firms producing vitamin "A" in the United States and frequently corresponded with the corporation in Acapulco. He traveled between New York and Mexico several times during 1944 and 1945 attending to corporate business. He spent approximately 170 days in 1944 attending to the business of the corporation and he was in Mexico approximately 200 days in 1945 and spent the greater part of his time during that period in the business of the corporation. He paid his own traveling expenses and paid for the equipment which he purchased for the corporation out of his own funds. The amounts advanced were shown as loans on the books of the corporation. He never received any salary from the corporation. *67 Most of the fishing boats originally ordered were completed and delivered and the corporation was actually engaged in the shark fishing business during most of 1944 and 1945. Embezzlement on the part of the general manager, loss of fishing boats due to storms, and other events led to the failure of the corporation and the termination of the business in the latter part of 1945. The parties have stipulated that debts owing to the petitioner by the corporation in the amount of $120,426.10 became worthless in 1945. The petitioner in his income tax return for 1945 claimed the worthless debts as a business loss. The Commissioner in determining the deficiency held that the loss was a non-business bad debt within the meaning of section 23 (k) (4) of the Internal Revenue Code. The loss was a non-business bad debt within the meaning of section 23 (k) (4) of the Internal Revenue Code. Opinion MURDOCK, Judge: The petitioner does not contend that he was engaged in the shark fishing business or that he was engaged in the business of promoting or financing corporations in general. He argues that he "was engaged regularly, continuously and extensively, *68 in 1944 and 1945, in the business of promoting, supervising and financing" this one corporation to which he made the loans and that his activities in that regard entailed an expenditure of time, money and effort sufficient to constitute the carrying on of a regular business so that the bad debts were fully deductible under section 23 (k) (1). Although the evidence shows that he was more than a passive investor in the Mexican corporation and spent much time and money in helping it, nevertheless, this case must be decided against the petitioner on the authority of A. Kingsley Ferguson, 16 T.C. 1248, and Jan G. J. Boissevain, 17 T.C. , (September 20, 1951), which held against the taxpayer under similar circumstances. Decision will be entered for the respondent.