Wallace L. Chesshire v. Commissioner.
Chesshire v. Commissioner
Docket No. 30969.
United States Tax Court
1952 Tax Ct. Memo LEXIS 320; 11 T.C.M. (CCH) 146; T.C.M. (RIA) 52042; February 19, 1952
*320 Milton M. Davis, Esq., for the petitioner. Robert Margolis, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Petitioner complains of respondent's determination of a deficiency in income tax of $2,468.03 for 1947 and asks that an overpayment be determined for that year. Two issues are raised: (1) the proper treatment to be accorded sums advanced by petitioner to a corporation of which he was the sole stockholder; and (2) is petitioner entitled to claimed deductions for the expenses of maintaining an apartment in New York City. Findings of Fact Petitioner is an individual residing in Cleveland, Ohio. He filed his income tax return for 1947 with the collector of internal revenue for the 18th district of Ohio. Petitioner, 49 years old at the time of the hearing, has been in the photography business since he was 13. Prior to 1947 petitioner operated photographic studios in about 26 different cities in the United States. In 1947 he was a stockholder and interested in the management of corporations operating about ten studios in various cities. His main office and headquarters were in Cleveland at Photographic Laboratories, *321 Inc. which operated a finishing plant. From Photographic Laboratories, Inc. he received a salary of $12,000. He also received annual salaries of $2,000 from Chesshire Photographers of Cleveland, Inc. and $500 from each of four other corporations. Gary Studios, Inc., (hereinafter called Gary), was a corporation organized under the laws of New York in 1944. Its original capitalization was $2,502. It operated a photographic studio in New York City. Its total outstanding stock consisted of six shares of no par value. On April 18, 1945, petitioner purchased all of the outstanding shares of Gary for $2,502. During 1945 Gary was in need of operating funds and petitioner advanced $12,303 at various times as the need arose. These advances were carried on the books as loans and notes payable to petitioner. Petitioner was repaid in part for these advances as follows: June 14, 1945
$1,000.00
June 21, 1945
250.00
Feb. 13, 1946
100.00
Dec. 31, 1946
2,400.00
Feb. 26, 1947
376.77
Feb. 28, 1947
100.02
TOTAL
$4,226.79
Gary paid no dividends during petitioner's ownership and was in precarious financial condition. On March 12, 1947, petitioner sold his stock in Gary *322 for $8,251.69, of which $2,251.69 was paid in cash and the balance payable in 12 notes of $500 each beginning June 1, 1947 and quarterly thereafter. It is not shown that the notes were not worth their face value. Pursuant to the terms of the contract of sale petitioner released Gary from all claims and causes of action which he might have against Gary. Petitioner's business activities required him to travel between two-thirds and three-fourths of the year 1947. He spent time in various cities, but most was spent in New York City where he could look after the Gary business and his businesses in nearby cities. Petitioner's attorney and accountant also were located there. Petitioner maintained a three room apartment in New York City which he occupied instead of hotels when he was in the City. Several other employees of petitioner, including petitioner's wife who was associated with him in business also used the apartment. Petitioner had furnished the apartment and maintained it in previous years. In 1947 he paid $2,400 rent for the apartment. Travel and entertainment expenses were deducted by various other corporations by which petitioner was employed. Other corporations by which *323 he also was employed reimbursed him for part of his travel and entertainment expense. Petitioner claimed a deduction in 1947 of $1,800 on account of the apartment rent and $72 for telephone calls. These amounts were ordinary and necessary expenditures incurred in connection with petitioner's business and were not reimbursed to him. On his return for 1947 petitioner claimed as a short term capital loss the amount of the advances made to Gary and reported a long term capital gain of $5,644.69 as the result of his sale of the Gary stock. Respondent disallowed the claimed business expenses. He also explained that the Gary "notes" were not worthless in 1947 and the loss claimed not allowable under section 23 (k), Internal Revenue Code. Opinion Petitioner's contention that the advances which he made to Gary should be treated as business debts must be dismissed with little discussion. The record shows that petitioner was interested as a stockholder and officer in a number of corporations. It does not show, however, that he was engaged in the business of financing or of making loans to any of those corporations other than Gary. Accordingly, the situation is *324 governed by our decisions in Jan G. J. Boissevain, 17 T.C. 325, and A. Kingsley Ferguson, 16 T.C. 1248. How then shall the advances be treated? They were set up on Gary's books as loans and notes payable. This in itself is not controlling. Sam Schnitzer, 13 T.C. 43. There is no evidence that interest was paid or contemplated or that any evidences of indebtedness were issued. Petitioner testified that the amounts advanced were used to pay salaries, buy materials, and pay other ordinary business expenses of the corporation. The advances totaling some $12,000 were all made during the first year petitioner became owner of all the Gary stock which he had purchased for $2,502. This of itself shows the need of additional capital. Considering all of the facts we decide that the advances were contributions to capital. Cf. Edward G. Janeway, 2 T.C. 197, affirmed 147 Fed. (2d) 602, and Isidor Dobkin, 15 T.C. 31, affirmed 192 Fed. (2d) 392. This is in line with the argument made by respondent. Having so decided, however, we also hold that the total of the unrecovered advances should be added to the *325 cost basis of petitioner's stock in Gary in determining his gain or loss on the sale of that stock in the taxable year and that this should be given effect in a rule 50 computation. See Kasle v. United States, (D.C.N.D. Ohio), 75 Fed. Supp. 341. Our findings of fact dispose of the second issue. We think the record shows that a substantial part of the expense of maintaining the apartment in New York was extended in connection with the business use made of the apartment and decide that $1,872 should have been allowed by respondent. Petitioner has amended his petition to ask for an additional allowance of $2,000 as expenses in connection with the apartment, but the only evidence on this score is petitioner's answer to the following question: "Q. Can you tell how much you estimated it cost to maintain that apartment in 1947 over and above the rent? "A. Oh, probably $2,000. This is not proper substantiation for the claim for an increased deduction and would not justify further allowance. Decision will be entered under Rule 50.