Samuel T. Tauber v. Commissioner.
Tauber v. Commissioner
Docket No. 27142.
United States Tax Court
1952 Tax Ct. Memo LEXIS 279; 11 T.C.M. (CCH) 269; T.C.M. (RIA) 52082; March 28, 1952
*279 Thomas Grant, Jr., Esq., for the petitioner. J. Nelson Anderson, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency of $1,131.14 in petitioner's income tax for the year 1947. The only adjustment contested by petitioner is respondent's determination that a reported loss of $25,400 represented "* * * a capital loss and/or a non-business bad debt." Some of the facts are stipulated. Findings of Fact The stipulated facts are hereby found. Petitioner, Samuel T. Tauber, is an individual residing in Washington, D.C. His Federal income tax return for the calendar year 1947 was filed with the collector for the district of Maryland. On October 16, 1944, petitioner entered into a partnership agreement with Sol C. Snider and Louis Snider for the purpose of engaging in the operation of the Fairfax Super-Market, located in Washington, D.C. The partnership agreement declared that a capital investment totaling $81,000 had been contributed, $32,400 each by Sol C. and Louis Snider and $16,200 by petitioner, and noted partnership interests of 40, 40 and 20 per cent, respectively. That instrument further provided *280 as follows: "Each partner shall devote his full time and attention to the partnership business and diligently and faithfully employ himself therein and carry on the same to the greatest advantage of the partnership, and none of the parties shall, directly or indirectly, be engaged in any other business during the lifetime of the partnership, unless authorized in writing by all partners. * * *
"A bank account in the name of the partnership shall be maintained in bank or banks selected by the partners and all monies of the partnership and all instruments for the payment of any debts shall be deposited in the bank account of the partnership and all checks thereon shall be signed with the firm's name and bear the signature by any or all partners. All instruments purporting to be an obligation of an indebtedness of the partnership shall be signed by all of the partners. It is also agreed that any payments of cash made by either partner on behalf of the business shall be reimbursed from business funds. * * *
"The partners shall contribute in their respective ratios (that is to say 40%, 40%, 20%) any additional capital that they may deem to be necessary in the interest of *281 the partnership. * * *
"It being specifically understood and agreed that in the event the said parties hereto desire to expand and open or buy other similar businesses, this Agreement and all things contained herein shall govern as to any other enterprises or ventures." Between the time of the inception of the partnership and April 1946, petitioner and his two partners actively engaged in the operation of supermarkets and had at one time as many as three supermarkets. In April of 1946, the last of the supermarkets was sold, and for all intents and purposes petitioner's partnership agreement with the Sniders was terminated. The proceeds from the sales of the grocery stores were deposited in their Fairfax Super-Market account maintained in a local bank. The Sniders, petitioner and "Tammy Tauber" could draw against the account. It was informally agreed that these proceeds would be used for any investment that would return a profit. Sometime after the sale a $5,000 deposit was made for the purchase of land but the sale was never consummated and the deposit was forfeited. Within the year petitioner and the Sniders purchased for $6,000 an undescribed piece of real property. *282 On or about June 1, 1946, petitioner and others acquired all of the capital stock of Duet, Inc., a corporation organized April 19, 1946, under the laws of the District of Columbia, and engaged in the operation of a restaurant and night club. Prior to April 19, 1946, the business of Duet, Inc., was operated by Herbert Sachs as a sole proprietorship under the name of Duet. The condition of the business as of April 19, 1946, was bad. Herbert Sachs had no more money with which to operate, and was in debt in a total amount of about $140,000. About that time efforts were being made on behalf of Sachs by his counsel, Joseph B. Danzansky, to interest a certain group of individuals in financing the business. The plan was to have Sachs incorporate the business, issue the stock, except for qualifying shares, to himself, and then dispose of the stock to these individuals. On April 19, 1946, Sach's business was incorporated as Duet, Inc., under the laws of the District of Columbia. Its authorized capital was $1,000, divided into 100 shares of stock with a par value of $10 per share. Ninety-eight shares were issued to Sachs and the two remaining shares were issued one each to Joseph B. Danzansky *283 and Bernard Margolius (then engaged with Danzansky in the practice of law) as qualifying shares. Danzansky became counsel and secretary of the new company. Upon the formation of Duet, Inc., an agreement was entered into between Sachs and the company whereby all of the assets of the business operated by Sachs as a sole proprietorship were turned over to the company and the company assumed all of the obligations owed by Sachs. The purchase price paid for the business by Duet, Inc., was its assumption of Sach's outstanding obligations. The only cash involved in the entire transaction was $100 paid by Sachs, Danzansky and Margolius for the stock to comply with incorporation laws requiring that 10 per cent of the stock be paid in. In May 1946, the group with which Danzansky had been negotiating for the purchase of the business decided not to consummate the transaction because "they did not like the deal." About May 15, 1946, another group, hereinafter sometimes referred to as the second group, became interested in acquiring or purchasing the stock of Duet, Inc. The second group consisted of petitioner, Sol C. Snider, Louis Snider, Walter Ogus, Joseph B. Danzansky, Lilyan B. Margolius *284 and Evelyn C. Koepenick, the last three being referred to as the Danzansky group. On or about June 1, 1946, petitioner, Sol C. Snider, Louis Snider, Walter Ogus and the Danzansky group each orally contracted for a 20 per cent interest in the company represented by 20 shares of stock, and further agreed that they would put into the company the sum of $60,000. The purpose of this contribution by petitioner and the others comprising the second group was to pay for the capital stock and to contribute money to the company necessary for it to operate. At that time, about June 1, 1946, the company's outstanding indebtedness had increased to approximately $150,000. On June 4, 1946, the following board of directors was elected: Louis Snider
President
Sol C. Snider
Vice-President
Samuel T. Tauber [petitioner]
Treasurer
Operation of Duet, Inc., under the new stockholders began June 5, 1946. About two months thereafter, petitioner became the manager of the company for which services he received a salary. At the time the arrangement for purchase of the Duet, Inc., stock was consummated, petitioner, Sol C. Snider, and Louis Snider contributed $11,000 each, for a total *285 of $33,000, to the company which sum was placed in escrow with Joseph B. Danzansky to be expended by him on behalf of the company. Out of this fund, Danzansky paid $17,078.71 on account of the debts due seven of the principal creditors of Duet, Inc., (formerly of Herbert Sachs) who had agreed to a moratorium on or about April 23, 1946, and the sum of $2,000 on a $10,000 note due to a creditor not a party to the moratorium. The 98 shares of stock originally issued to Herbert Sachs and the two qualifying shares issued to Danzansky and Margolius were surrendered to the company, and on June 9, 1946, certificates for the total authorized capital stock of Duet, Inc., were issued in the names of the following persons and for the number of shares set forth opposite their names: Louis Snider
20 shares
Sol C. Snider
20 shares
Samuel T. Tauber [petitioner]
20 shares
Walter Ogus
20 shares
Joseph B. Danzansky
6 2/3 shares
Evelyn C. Koepenick
6 2/3 shares
Lilyan B. Margolius
6 2/3 shares Thereafter Herbert Sachs was no longer connected with Duet, Inc. During the remainder of the month of June 1946, the petitioner, Sol C. Snider and Louis Snider contributed to the *286 corporation an additional $1,000 each, making their total contributions for that month $36,000, including the sum of $33,000 placed in escrow with Danzansky. Of the $36,000, $600 was charged to the cost of the 60 shares of stock, 20 shares held by each, at $10 per share, leaving a balance of $35,400 which was credited on the books of the corporation to an account denominated, "Notes Payable - Sinder, Tauber and Snider." During the month of June 1946, the Danzansky group contributed $12,000 to the company, of which $200 was charged to the cost of the 20 shares of stock issued to them $10at per share and the balance of $11,800 was credited on the books of the corporation to an account designated "Notes Payable - J. B. Danzansky, et al." During the month of June 1946, Walter Ogus contributed $12,000 to the corporation, $200 of which was charged to the cost of the 20 shares of stock issued to him at $10 per share and the balance of $11,800 was credited on the books of the corporation to an account designated "Notes Payable - Walter Ogus, et al." The payment for the Duet, Inc., stock by petitioner, Sol C. and Louis Snider, Walter Ogus, and the Danzansky group was recorded on the company's *287 books by these entries: Due from subscribers
1,000.00
Capital stock
1,000.00
N. P. Ogus et al.
200.00
Snider et al.
200.00
Danzansky et al.
600.00
Due from subscribers
1,000.00
An analysis of the total amounts contributed to the company by its stockholders and a summary of the contributions is as follows: Snider,
J. B.
Walter
Date
Tauber
Danzansky,
Ogus,
1946
and Snider
et al.
et al.
June 30
$35,400.00
$11,800.00
$11,800.00
July 31
9,000.00
3,000.00
3,000.00
Aug. 31
2,000.00
Sept. 30
7,000.00
3,000.00
2,000.00
Nov. 30
13,500.00
3,000.00
2,000.00
Dec. 31
7,000.00
1947
Jan. 31
1,500.00
500.00
500.00
$75,400.00
$21,300.00
$19,300.00
* * *
SUMMARY
Snider, Tauber and Snider
$ 75,400.00
J. B. Danzansky, et al.
21,300.00
Walter Ogus, et al.
19,300.00
Total
$116,000.00
The additional contributions made by the stockholders after June 1946 and included in the foregoing analysis were credited on the books of the company to their respective accounts and designated "Notes Payable." No notes were given at any time by the company to any of the stockholders by reason *288 of any of the original or additional contributions made by them to it. No interest was ever paid by the company to any stockholder nor was any interest ever accrued on the books of the company with respect to all or any portion of the contributions made to it by the stockholders. No portion of the original or additional contributions was ever repaid by the company to the stockholders nor was any portion thereof withdrawn by any stockholder. Petitioner received no dividends from the company. On December 5 and 6, 1946, payments were made by the company to those principal creditors who granted the moratorium of April 23, 1946; the amounts of the payments ranged from $50 to $1,483. On January 9, 1947, Duet, Inc., sought an additional moratorium for the payment of its obligations and, by its counsel, sent similar letters on that date to all of its creditors with the exception of two, rading. in part, as follows: "As counsel for Duet, Inc., operators of the Delmonico Club, [beginning in June, 1946 and ending February 10, 1947. Duet, Inc. traded as Delmonico's] we have been requested to communicate with you and other creditors relative to the payment of certain obligations in your *289 favor, which were assumed by the Corporation from Mr. Herbert Sachs. "Since the present Stockholders succeeded to the ownership of the Corporation, the business has been operated at a large loss. In addition, many preferred claims totaling more than $60,000.00 had to be paid. As a result, the present Stockholders have advanced to the Corporation in the last 6 or 7 months, in order to meet these losses and preferred charges, cash sums totaling approximately $120,000.00. "The Stockholders believe that, with proper operation and management, for which they are now making arrangements, the Club can be operated at a profit. They are, therefore, willing at this time to advance additional sums, in a limited amount, to meet current expenses and to continue in business. It is necessary, however, that they obtain the full cooperation of the creditors whose obligations the Corporation assumed to pay. It would be impossible at this particular time to continue if the monthly payments on these obligations were required to be paid. "We have been requested, therefore, to obtain from you and other creditors, similarly situated, an additional moratorium on the payments of your note for a period *290 of six months; the first payment after such moratorium to be made on August 1, 1947. If you consent to this plan, it would be appreciated if you would sign in the space provided below for that purpose. We have discussed this matter with some of the creditors and they have expressed a willingness to go along. As a matter of fact, we have worked out a similar plan with the Federal Collection of Taxes. "This letter is written to you with great reluctance on our part. Your fairness, patience and willingness to help have been well demonstrated heretofore. But it must be realized that the suggestion of the Stockholders, who have invested $120,000.00 of their own money, offers the only solution to the payment of your debt as well as a possible return of their advancements." By similar letters dated January 30, 1947, Duet, Inc., by its counsel, advised its two remaining creditors who had not been approached previously with respect to the moratorium sought in January 1947, in part, as follows: "Your letter of January 27 to Delmonico's has been referred to this office for answer. The financial situation at this Club has been extremely acute and on Monday, January 27, 1947, an impromptu *291 meeting of all local creditors was held at which time the full and complete picture was described to those present. A second creditors' meeting is scheduled for Monday, February 3, 1947 at 3:00 P.M. o'clock, Parlor 'E'. Willard Hotel, Washington, D.C. If your representative can be present, it would be appreciated. "Briefly, Delmonico's is indebted in the amount of approximately $125,000, which includes more than $30,000 to the Bureau of Internal Revenue for excise taxes. The Stockholders have put more than $120,000 in actual cash into the business since June, 1946, and have drawn nothing out. Because of the nature of the lease and the volume of debts owing, the Club would be forced to close unless consideration were shown by all the creditors. At the meeting last Monday, it appeared probable that the creditors would be agreeable to a six months' moratorium with payments thereafter in 19 equal installments; the indebtedness to be represented by notes bearing 5 percent interest. The principal creditor, outside of the government, who is owed more than $29,000 has expressed his willingness to go along with the plan. "As you are one of the out-of-town accounts, we intended to write *292 you of the situation immediately after the next meeting. Your full cooperation in the effort to keep Delmonico's operating, which is the only means by which the creditors will realize anything on their debts, will be most deeply appreciated by the Stockholders, who, as I have indicated, have more than $120,000 in the operation. The plan proposed will, we are sure, be to your best interest and to the best interest of all concerned." The attempt to obtain a moratorium in January 1947, was unsuccessful and Duet, Inc., closed its doors for business on or about February 15, 1947. Under the control of petitioner and the other stockholders, Duet, Inc., experienced a steady increase in its operating deficit shown on its monthly balance sheets as follows: Deficit on
Balance Sheet as at
Operations
June 30, 1946
$11,854.42
July 31, 1946
20,117.67
August 31, 1946
24,294.34
September 30, 1946
28,988.17
October 31, 1946
28,868.72
November 30, 1946
38,119.44
January 31, 1947
58,771.00 In its Federal income tax return for the period beginning June 1946, and ending February 10, 1947, Duet, Inc., reported a loss of $72,159.65. A petition in bankruptcy of Duet, *293 Inc., signed by Louis Snider, was filed in the District Court of the United States for the District of Columbia on April 10, 1947. The petition showed, in part, taxes due the United States of $30,305.63 (claim later filed for $31,947.33), unsecured claims of $196,173.86, total of all debts, including other items not mentioned above, of $236,031.73, and total assets of $40,804.72. The schedule of "unsecured claims" in the bankruptcy petition listed the following five items after each of which appeared the designation "loan": Joseph Danzansky
$21,300.00
Walter Ogus
19,300.00
Louis Snider
25,133.34
Samuel T. Tauber [petitioner]
25,133.33
Sol C. Snider
28,133.33 [1]
None of the unsecured creditors of Duet, Inc., received anything in distribution as a result of the bankruptcy proceedings. The funds of the bankrupt were paid to the United States Government *294 on account of its claim for taxes. In his individual income tax return filed for the calendar year 1947 petitioner listed total wages, salaries, bonuses, commissions and other compensation of $875 received from Delmonico's. On Schedule D of the return, a loss of $700 was listed from the sale or exchange of capital assets. On Schedule E, listing income from partnerships, estates, trusts and other sources, the following items were listed: Fairfax Super Market
$ 6,260.26
Sol C. and Louis Snider and
Samuel Tauber - loss
25,400.00 A total loss of $18,964.74 was reported. A partnership return for the calendar year 1946 in the name of Sol C. and Louis Snider and Samuel T. Tauber was executed by Sol C. Snider March 13, 1948, and filed with the collector for the district of Maryland March 15, 1948. On Schedule C of the return, denominated Bad Debts, the following appeared: Total investment loans made
$76,000.00
Received from guarantors on various
loans
4,800.00
Bad debt - uncollectible from bank-
rupt
71,200.00 Long-term capital losses of $300 were claimed with this explanation: "Duet, Inc. - stock 5/47 (worthless) $600." Respondent redetermined *295 petitioner's income tax liability for 1947 and of several adjustments made to reported net income limited the $25,400 reported loss to $1,000 as a capital loss and/or a non-business bad debt. Petitioner and the Sniders were at no time engaged in the business of loaning money, nor was petitioner engaged in the trade or business of organizing, promoting, and financing enterprises. The business of operating a restaurant and night club was that of Duet, Inc., and not petitioner's. Opinion It matters little which of the several available approaches we adopt in disposing of the present proceeding. The circumstances lead to a similar result whichever phase of the matter is thought dispositive. That the so-called advances to Duet, Inc., were actually in the nature of a capital contribution seems reasonably clear from all the evidence, especially the earlier amounts which represent well over half of the total. [2] As to these, the so-called loans were exactly in proportion to the capital stock; the capitalization was so thin as to make it impossible to assume that the stockholders would not have anticipated further investments; no interest was to be paid; and even though established *296 on the books as a notes payable account, no notes were ever actually issued. We are satisfied that at least the first portion of the funds were thus on their face a contribution to capital. Isidor Dobkin, 15 T.C. 31, affirmed (C.A. 2), 192 Fed. (2d) 392. As time went on and the venture became increasingly precarious, the advances were, it is true, at least superficially disproportionate. By that time, however, the obvious effort was to salvage some part of a virtually insolvent enterprise. That these subsequent contributions may not have been exactly proportionate to stockholdings must yield, in our opinion, to the fact thus appearing that by that time it could not well have been felt by petitioner and his fellow investors that a full return of the sums invested was a reasonable expectation. See Fred A. Bihlmaier, 17 T.C. 620. The motivation would thus resemble the typical case of the owner of stock attempting to salvage a part of his investment by *297 further capital contributions, rather than true loans. See, e.g., Erard A. Matthiessen, 16 T.C. 781. This brings us to a brief consideration of a slightly different aspect of the facts. At least as to the later investments, even assuming them to have been loans, there is no persuasive evidence that they were not worthless when acquired. Under such circumstances, no charge-off of bad debts is permissible. George B. Markle, Jr., 17 T.C. 1593 (March 26, 1952). The record as a whole gives strong indications that no prudent lender would have made the advances on a loan basis. "The possibility is remote indeed that a disinterested lender of money would have made the * * * unsecured loan * * *." Erard A. Matthiessen, supra, 786. Finally, respondent's alternative determination invokes the now familiar problem of a business as against a non-business bad debt. There is no evidence that petitioner or his associates were in the business of lending money, or financing enterprises, and we have found the facts to the contrary. Nor is it possible to conclude that the corporation's business was petitioner's business. A. Kingsley Ferguson, 16 T.C. 1248. *298 Only on one of these two theories could any advances be deducted as ordinary losses under the business bad debt concept of section 23 (k) (4), Internal Revenue Code. Cf. Weldon D. Smith, 17 T.C. 135. Even granting that the sums in question were loans rather than capital investments, we are thus compelled to reject petitioner's claim. And since respondent has permitted the deductions as capital losses, we conclude that petitioner has received as generous treatment as the statute permits. Jan G. J. Boissevain, 17 T.C. 325; Estate of William P. Palmer, 17 T.C. 702. Decision will be entered for the respondent. Footnotes
1. The analysis of amounts contributed to the company by its stockholders lists a total figure of $75,400 by petitioner and Sol C. and Louis Snider. The inconsistency between that figure and the total of the unsecured claims of petitioner and the Sniders listed in the bankruptcy petition is unexplained.↩
2. ↩
June 30,
July 31,
1946
1946
Petitioner, Sol C. and
Louis Snider
$35,400.00
$9,000.00
Danzansky Group
11,800.00
3,000.00
Walter Ogus
11,800.00
3,000.00