William C. Byers and Bernice B. Byers v. Commissioner.
Byers v. Commissioner
Docket No. 46409.
United States Tax Court
T.C. Memo 1955-45; 1955 Tax Ct. Memo LEXIS 293; 14 T.C.M. (CCH) 153; T.C.M. (RIA) 55045; February 24, 1955
*293 1. Petitioner, William C. Byers, was president and majority stockholder of a corporation. The corporation gave him a certificate of indebtedness in return for advances which he had previously made to its predecessor proprietorship. This debt became worthless in 1950. Petitioners claimed a deduction for the entire amount of the debt on their return for that year. Held, this was a nonbusiness bad debt and petitioners' relief is limited to the provisions of section 23(k)(4) of the Code. 2. Petitioners claimed a deduction for unreimbursed expenses incurred in moving to another locality to accept new employment. Held, such expenses are nondeductible personal expenses. 3. Petitioners claimed various miscellaneous deductions from gross income. Held, on the facts, that such expenses are not allowable as deductions from either gross income or adjusted gross income. Harry H. Meisner, Esq., Box 367, Anchorage, Alaska, for the petitioners. Walter T. Hart, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involtes deficiencies in income taxes determined against petitioners for the years 1949 and 1950 in the amounts of $276.56 and $3,559.24, respectively. The issues to be decided are: (1) whether a $12,200 loss sustained by petitioner in 1950 was a business or a nonbusiness bad debt; (2) whether unreimbursed expenses incurred in moving to another locality to accept new employment are deductible expenses; and (3) whether certain miscellaneous expenses are deductible by petitioners for the year 1949. Findings of Fact William C. Byers and Bernice B. Byers are husband and wife residing in Cincinnati, Ohio. They filed joint income tax returns for the years 1949 and 1950 with the collector of internal revenue at Detroit, Michigan. On January 2, 1946, William C. Byers (hereinafter referred to as petitioner) purchased a gasoline and oil wholesale distribution business located in Indianapolis, Indiana. He operated *295 it as a sole proprietorship under the trade name of Triangle Oil Company until November 1946, when it was incorporated under the laws of the State of Indiana. Petitioner was president and the majority stockholder of the corporation (hereinafter sometimes referred to as Triangle). The only other stockholders were petitioner's son and his wife, the latter also acting as secretary and treasurer of the corporation. Due to the poor financial condition of the business, petitioner advanced approximately $12,000 to $14,000 to it from the time he purchased it until it was incorporated. Upon incorporation, Triangle gave a certificate of indebtedness to petitioner, pursuant to which the corporation promised to pay him the sum of $12,200 at some unspecified future date. The certificate stated that interest at the rate of 3 per cent per annum was to be paid annually. The certificate was signed by petitioner and his wife in their capacities as officers of the corporation. It was secured by a chattel mortgage upon the personal property of the corporation. Petitioner subsequently allowed the lien of such mortgage to be subordinated to an instrument of security favoring one of Triangle's creditors. *296 This subordination was insisted upon by the creditor in exchange for the extension of a line of credit to Triangle. Petitioner devoted all of his time and attention to the business of the proprietorship and its successor corporation, Triangle, until July 1, 1947. On that date, he accepted a position as general sales manager for a concern in Cincinnati, Ohio. Thereafter, because of petitioner's absence from Indianapolis, his wife managed the affairs of the business, and petitioner's activities in connection with Triangle were restricted to weekends, which he spent in Indianapolis, and almost daily conferences with his wife by long distance telephone. In March or April of 1948, an arrangement was made with one Glen D. Holmes whereby he was to assist in the management of the business. In January of 1949, petitioner moved to New York City, accepting a position with the Packard Motor Company there. Petitioner lived in New York City until July 15, 1950, and his contact with the operation of Triangle was thereby still further reduced. During the period January through March of 1949, he made 2 or 3 trips by air to Indianapolis, and thereafter he had weekly long distance telephone conversations *297 with Holmes about the affairs of Triangle and received a monthly statement from him. Petitioner's wife resided in Cincinnati, Ohio, during the early part of 1949, and traveled to Indianapolis 2 or 3 times a week to confer with Holmes about the affairs of Triangle. She moved to New York City later in 1949. About May or June of 1950, Triangle was compelled to wind up operations as a result of involuntary receivership proceedings filed against it by its creditors in the Superior Court of Marion County, Indiana, Cause No. B-76948. Petitioner filed a claim for $13,697.87 in the receivership proceeding, said amount including the $12,200 evidenced by the certificate of indebtedness previously issued to him. The receiver disallowed the entire amount of this claim and the order of disallowance was sustained by the Superior Court of Marion County, Indiana, on April 6, 1954. Petitioners claimed a deduction on their joint return for the calendar year 1950 for a "bad debt loss to Triangle Oil Company" in the amount of $12,200. Said deduction has been disallowed by respondent. Petitioners reported gross income for 1949 and 1950 in the amounts of $12,937.40 and $26,755.88, respectively. All of *298 such income was earned by petitioner as an employee of various corporations, and no part of it was received as a result of his stock holdings in Triangle or because of his interests in or personal efforts on behalf of that company. Petitioner was reimbursed by the Packard Motor Company for part of the expenses incurred by him in connection with his move to New York City in January 1949. On their joint return for 1949, petitioners claimed a deduction from gross income of $1,498.92 as business expenses. Said amount was deducted from the total wages received by petitioner during 1949 as "business expenses not re-imbursed" to arrive at adjusted gross income. Schedule #1 attached to their 1949 return shows the details of the claimed $1,498.92 deduction from salary income as follows: Traveling and Automobile Expenses
Explanation
Amount
Business expenses incurred for Triangle Oil Co.
(Taxpayer is president of company - expenses not reimbursed)
Repairs, gas and oil
$ 42.26
Out of town business trips
290.19
$ 332.45
Business expenses incurred for Packard Motor Company, Inc.
Moving expenses from Detroit to New York
$1,731.96
Less: Re-imbursed by company
715.22
1,016.74
Rent on typewriter
1.24
Business envelopes
9.26
Depreciation on auto - 4 year life - cost $1,950.00
50% used for business - seven months of 1949
139.23
$1,498.92
*299 In addition to the $1,498.92 deduction from gross income on their 1949 return, petitioners also claimed the $1,000.00 standard deduction from adjusted gross income in their computation of net income. Respondent disallowed $1,208.73 of the $1,498.92 deduction from compensation claimed by petitioners, allowing only the $290.19 claimed for "Out of town business trips." He determined that the $1,016.74 attributed to moving expenses was a nondeductible personal expense. He further determined that the following expenses, while allowable as itemized deductions from adjusted gross income, could not now be allowed because petitioners had taken a $1,000 standard deduction in lieu of such itemized deductions: Repairs, gas and oil
$ 42.26
Rent on typewriter
1.24
Business envelopes
9.26
Depreciation on auto
139.23
$191.99
Opinion RICE, Judge: We must decide whether petitioner's failure to recover $12,200 on a certificate of indebtedness issued to him by a corporation of which he was the president and majority stockholder resulted in a business or a nonbusiness bad debt under section 23(k) of the Internal Revenue Code of 1939. [1] This issue has been before the Court *300 many times. Estate of William P. Palmer, Jr., 17 T.C. 702 (1951); Jan G. J. Boissevain, 17 T.C. 325 (1951); A. Kingsley Ferguson, 16 T.C. 1248 (1951). It is clear, from the facts of this case, that petitioners' relief is limited to the provisions applicable to nonbusiness bad debts. *301 Petitioner was not in the business of lending money or organizing and financing corporations. He was not engaged in any business to which this loss can be attributed, for the business of the corporation cannot be treated as that of its stockholder or officer. Burnet v. Clark, 287 U.S. 410 (1932). Consequently, this debt upon which petitioner failed to recover must be considered as a nonbusiness bad debt. Petitioners' reliance on cases allowing the deduction of losses under section 23(e) is inapposite since the item in issue is clearly a debt. Sections 23(e) and 23(k) are mutually exclusive and petitioners must, therefore, be restricted to the latter section which pertains to losses on debts. Spring City Co. v. Commissioner, 292 U.S. 182 (1934). We turn next to the various deductions from gross income, aggregating $1,498.92, which were claimed by petitioners on their joint return for 1949. On brief, petitioners discard the itemization on their return. They now contend that all or most of the $1,498.92 was expended by them for unreimbursed travel expenses in connection with their employment as officers of Triangle. However, petitioners have failed to submit *302 any bills or records to substantiate the claimed expenses and we are convinced, on the basis of the record before us, that the amounts in question were expended in the manner originally itemized by petitioners on the Schedule attached to their return. In their itemized list, petitioners claimed that $290.19 was expended for "Out of town business trips" on behalf of Triangle and respondent has allowed this item. We are unable to see how any of the other items can be considered as unreimbursed travel expenses of an employee, deductible from gross income pursuant to section 22(n) of the Code. The largest item in issue, amounting to $1,016.74, was claimed as a deduction for petitioner's unreimbursed moving expenses to New York City. This must be disallowed since the expenses of moving to another locality to accept new employment are nondeductible personal expenses. York v. Commissioner, 160 Fed. (2d) 385 (C.A.D.C., 1947). As for the $42.26 attributed to "Repairs, gas and oil" and the $139.23 to "Depreciation on auto," it does not appear that these expenses could have been incurred by either of the petitioners in connection with travel as an employee on behalf of Triangle *303 during 1949. Petitioner resided in New York City during 1949, and we do not see how such automobile expenses could have been incurred by him on behalf of Triangle, which did a local business in and around Indianapolis, Indiana. Petitioner's wife resided in Cincinnati, Ohio, during the early part of 1949 and later moved to New York City. There is no evidence in the record that she used a car to travel on behalf of Triangle. During the period she was in Cincinnati, she did drive to Indianapolis 2 or 3 times each week in order to confer with Triangle's manager. If the automobile expenses in the itemized list were incurred by her in this fashion, rather than by petitioner, they are nevertheless nondeductible. An employee may not deduct the cost of commuting from his residence to his place of employment, no matter how distant it may be. Commissioner v. Flowers, 326 U.S. 465 (1946); Henry C. Warren, 13 T.C. 205 (1949); Beatrice H. Albert, 13 T.C. 129 (1949). In order that a taxpayer's travel expenses be deductible under section 22(n), a proximate relation between such expenses and the taxpayer's duties as an employee must be shown. Douglas A. Chandler, 23 T.C. 653, *304 filed January 19, 1955. This principle applies with equal effect to expenses which petitioner may have incurred as a result of 2 or 3 plane trips from New York City to Indianapolis, during 1949. The remaining deductions in issue consist of $1.24 for "Rent on typewriter" and $9.26 for "Business envelopes." Since petitioners elected on their joint return to take the optional standard deduction of $1,000, in lieu of itemized deductions from adjusted gross income, these items were properly disallowed. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. * * *
(4) Non-business Debts. - In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩