Ralph E. Keller and Betty J. Keller v. Commissioner.
Keller v. Comm'r
Docket No. 5373-67.
United States Tax Court
T.C. Memo 1970-79; 1970 Tax Ct. Memo LEXIS 284; 29 T.C.M. (CCH) 369; T.C.M. (RIA) 70079; March 31, 1970, Filed. Dean W. Chipman, 523 Newhouse Bldg., Salt Lake City, Utah, for the petitioners Harry M. Asch, for the respondent. SCOTT
*284 Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1963 and 1964 in the amounts of $7,438.03 and $5,120.06, respectively. The issue for decision is whether petitioners in each of the years here in issue are entitled to deductions of part of the amounts which they had on deposit in two uninsured savings institutions which in 1963 filed petitions for reorganization under chapter X of the Bankruptcy Act either as partially worthless business debts or as business losses. Findings of Fact Some of *285 the facts have been stipulated and are found accordingly. At the time of the filing of their petition in this case, petitioners, husband and wife, were residing in Bountiful, Utah. They filed their joint Federal income tax returns for the calendar years 1963 and 1964 with the district director of internal revenue in Salt Lake City, Utah. Since 1948 Ralph E. Keller (hereinafter sometimes referred to as petitioner) has conducted a trade or business as a sole proprietorship under the registered fictitious name "Federal Home Improvement Company" (hereinafter referred to as Federal). Federal was licensed under the laws of Utah during 1963 and 1964 as a general building contractor and specialty contractor for roofing and siding. Federal was principally engaged in the business of installing roofing and siding on single family homes, remodeling homes and providing financing for those of its customers who could not otherwise arrange financing. The business was operated from petitioner's residence. 370 Since the initiation of the business in 1948 Federal has always maintained at least one separate business checking account in its own name. From July 17, 1950, up to and including July 26, 1963, Federal *286 had a business checking account No. XX4084 in its name at the Continental Bank and Trust Company, Salt Lake City, Utah. Beginning May 10, 1963, Federal had a business checking account No. XX-X0-187 in its name at the Beehive State Bank, Salt Lake City, Utah. During the years 1963 and 1964 petitioners owned and rented two income-producing properties. On their Federal income tax return for 1963 petitioners reported interest income from the following sources: Pioneer Savings and Loan
$ 131.57
Prudential Federal Savings and Loan
18.75
Deseret Federal Savings and Loan
202.09
First Federal Savings and Loan
18.75
American Savings and Loan
18.75
State Savings and Loan
138.38
Murray First Thrift and Loan
18.75
Installment notes: Harkness
$360.00
$491.06
Reese
490.84
Larsen
40.00
Bateman
48.29
Kidd 286.25
Total interest received
$2,263.48
On their joint Federal income tax return for 1964 petitioners reported interest income from the following sources. State Savings & Loan
$580.74
Pioneer Savings and Loan
524.54
Zions Savings and Loan
189.19
Federal Building Savings and Loan
238.00
First Federal Savings & Loan
387.75
Prudential Federal Savings & Loan
359.63
Deseret Federal Savings & Loan
430.12
Murray First Thrift Savings & Loan
297.40
Installment notes (Reese, Harkness, D. Larsen, Bateman, Kidd) 861.55
Total interest income
$3,868.92
*287 All of the accounts or loans from which petitioners reported interest in 1963 and 1964 were in their joint names. Since December 4, 1954, petitioners have had their personal joint checking account at Bountiful State Bank, Bountiful, Utah. On January 16, 1961, petitioners deposited funds with Guaranty Trust Deed Corporation for investment in the Guaranty Sevenplan Trust Fund. The business purpose of Guaranty Trust Deed Corporation (a Utah corporation incorporated on October 26, 1959) was the purchase or acquisition at a discount of promissory notes secured by trust deeds or mortgages and the purchase of real estate contracts at a discount. To effectuate its business purpose the corporation created Guaranty Sevenplan Trust Fund. Investors were to receive 7 percent interest per annum on funds deposited with Guaranty Trust Deed Corporation. On January 18, 1963, Guaranty Trust Deed Corporation filed a petition with the United States District Court, District of Utah, for a chapter X reorganization. Petitioners filed a proof of claim in that reorganization proceeding on June 19, 1963, for $5,565.58, the unpaid balance of their account with the Guaranty Trust Deed Corporation. In the *288 reorganization proceeding petitioner was classified as an unsecured creditor and placed in class 5 of the proposed plan of reorganization filed December 31, 1964, and in class 4 of the amended plan of reorganization filed April 1, 1965. On May 5, 1967, Guaranty Trust Deed Corporation was adjudged a bankrupt and bankruptcy proceedings replaced the chapter X reorganization proceeding. An order was entered on June 25, 1968, in the bankruptcy proceeding allowing unsecured claims, including the claim of petitioners for $5,565.58. In July of that year the first interim dividends to the unsecured creditors were paid with petitioners' receiving $230.30 in 1967 and $184.74 in 1968 as interim dividends. In December of 1960 petitioners opened a thrift account with Beehive Security Thrift and Loan. Petitioners made deposits in their Beehive Security Thrift and Loan account by means of checks drawn on the Federal business account as well as by checks on their personal account and by deposits of amounts received as payments from customers. Petitioners made the following withdrawals from the thrift account during its existence: Date
Amount
Purpose
May 9, 1961
$7,000.00
Deposit to Federal account
February 12, 1962
5,000.00
Loan to accountant
April 11, 1962
3,700.00
Payment of petitioners' income tax
January 17, 1963
1,000.00
Unknown
*289 371 Beehive Security Thrift and Loan was incorporated under the laws of Utah and was licensed to make loans to the public and to issue thrift certificates and accept thrift deposits from the public. In May of 1963 Beehive Security Thrift and Loan filed a petition with the United States District Court for a reorganization pursuant to chapter X of the Bankruptcy Act and petitioners filed a proof of claim in the reorganization proceeding for the outstanding balance in their account amounting to $32,824.88. Petitioners were in the unsecured creditor class in the reorganization proceeding. A plan of reorganization was approved by the Bankruptcy Court on December 31, 1964, and was amended on January 17, 1968. In February 1964 petitioners and others similarly situated filed a civil action in the United States District Court for the District of Utah for the recovery of the amounts shown on the thrift certificates issued to them by Beehive Security Thrift and Loan. The defendants were the Banking Commissioner of Utah, a bonding company, and the alleged promoters and Board of Directors of Beehive Security Thrift and Loan. Pursuant to a pretrial settlement agreement approved on November 16, 1965, petitioners *290 have received the total sum of $7,116.96 in settlement of their claim in this civil suit and have outstanding judgments entered against several persons in the full amount of their $33,000 claim together with interest. Petitioners have been advised by their attorney that the financial status of the judgment-debtors makes these judgments worthless. The individuals against whom these judgments were entered have left the State of Utah. Because of the civil action commenced by petitioners, the trustee in bankruptcy in the reorganization proceeding objected to their unsecured claim for $32,824.88 and at the time of the trial of this case, these objections had not been resolved. The parties agree that the debt of Beehive Security Thrift and Loan to petitioners was not in the years in issue or at the time of the trial totally worthless, since Beehive Security Thrift and Loan is still in reorganization proceedings. In December 1963 petitioners deposited $5,000 with the American Savings and Loan Association in their account No. XXXX. On July 2, 1964, the entire account amounting to $5,131.65 was withdrawn and deposited in the business checking account for Federal which was kept in the Beehive *291 State Bank. The deposits in Beehive Security Thrift and Loan and Guaranty Trust Deed Corporation were for the purpose of earning interest on the money deposited. Petitioner included all monetary accounts, including those in Beehive Security Thrift and Loan and Guaranty Trust Deed Corporation on net worth statements presented to financial institutions from which he obtained the financing necessary to operate the business of Federal. Petitioners made no distinction between outside investments and the business assets involved in Federal. Petitioner twice negotiated for the purchase of a going business, one a manufacturer of shingles of the type used in petitioner's roofing business, and the other engaged in kitchen remodeling similar to the kitchen remodeling work done by Federal. In neither instance was the business activity acquired. Petitioner ran all receipts through the Federal account or the various savings accounts normally providing for his personal expenditures for daily household use through a monthly check to his wife from the Federal checking account in the average sum of $450. Petitioners on their Federal income tax returns for 1963 and 1964 deducted $18,816.50 and *292 $9,408.25, respectively, as partially worthless debts. Respondent in his notice of deficiency disallowed the claimed deductions with the following explanation: The deductions of $18,816.50 in 1963 and $9,408.25 in 1964 claimed as business losses resulting from deposits of cash in accounts with the Beehive Security Thrift & Loan Company and Guarantee [sic] Trust Deed Corporation, both of which are in receivership, are disallowed. It is determined that the losses are nonbusiness bad debts allowable as short-term capital loss deductions in the year of the receivership windup. Accordingly, your taxable income for 1963 and 1964 has been increased in the respective amounts of $18,816.50 and $9,408.25. Opinion Petitioners contend that the indebtednesses resulting to them from their deposits with Guaranty Trust Deed Corporation and Beehive Security Thrift and Loan were business debts and that to the extent these debts became partially worthless in the years here in issue they are entitled to a business bad debt or loss deduction. 372 Both parties recognize that the indebtedness of one of the savings institutions to petitioners did not become totally worthless in the years *293 here in issue and it is not clear whether petitioners contend that the indebtedness to them from the other institution became totally worthless in either 1963 or 1964. Since a taxpayer is not allowed to deduct for partial worthlessness of a nonbusiness bad debt, [1] the first question which must be resolved in this case is whether the debts here in issue were business or nonbusiness debts. Section 166(d) (2), I.R.C. 1954, defines a nonbusiness debt as one "other than (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." The test which is to be applied is whether the debt is proximately related to petitioner's trade or business. J.T. Dorminey, 26 T.C. 940 (1956). A trade or business is that which so consumes a taxpayer's time, moneys, and effort as to constitute his business life. A. Kingsley Ferguson, 16 T.C. 1248, 1257 (1951). While a taxpayer *294 may have more than one trade or business, each must in fact be a "business" to so qualify under the revenue laws. In the instant case petitioner's business was that of doing home improvements such as installing roofing and siding on homes. We do not consider the mere deposit of funds in the names of petitioner and his wife to draw interest either as being proximately related to that occupation or a separate "business" of petitioners. Petitioner has never segregated these funds to use in his business, but has in fact used funds from these accounts to satisfy his personal debts. While we do not doubt that petitioner was planning to use these funds for any endeavors which would yield him a return or increase his business assets, such an expectation is no different from that held by any individual with regard to accumulated personal funds. Petitioner had no specific use planned for these funds which might act to segregate them to business use, but had only a general hope they could be advantageously used. Such a hope is not sufficient to make the debt one proximately related or incurred in connection with petitioner's trade or business. Petitioners have agreed that the Beehive Security *295 Thrift and Loan debt was only partially worthless in the years here in issue. It is not clear whether petitioners contend that the Guaranty Trust Deed Corporation debt became totally worthless during the years here in issue. Certainly, the evidence would not support such a contention. A showing of bankruptcy in a later year is not in and of itself sufficient to prove worthlessness. Teitelbaum v. Commissioner 294 F. 2d 541, 546 (C.A. 7, 1961), affirming a Memorandum Opinion of this Court. In this case the evidence shows a petition for reorganization under chapter X of the Bankruptcy Act was filed during the years here in issue and an adjudication in bankruptcy occurred much later. We hold that petitioners are not entitled to the deductions claimed for partially worthless debts. Apparently petitioners no longer contend that they are entitled to the claimed deductions as "business losses." If they have not abandoned that contention, we hold that they are not entitled to such claimed deductions both because a debt which becomes partially or wholly worthless is deductible only under the provisions relating to deduction of worthless debts (Section 166, I.R.C. 1954) and because *296 of petitioners' failure to show a proximate relationship of the deposits to their trade or business. Decision will be entered for respondent. 373 Footnotes
1. SEC. 166 (I.R.C. 1954). BAD DEBTS. * * * (d) Non business Debts. - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and * * *↩