HARRY SACKSTEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOUIS ZLOBIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 21086, 21087. Promulgated April 7, 1950.

*Monroe J. Winsten, Esq.*, for the petitioners.
*Michael Waris, Jr., Esq.*, for the respondent.

**OPINION.**

MURDOCK, *Judge*: There is no adequate explanation in the record for the different amounts, $7,419.09, $7,219.09, and $7,100, shown in the findings, all of which relate to the same thing.

Usually contributions by stockholders to their corporation are regarded for tax purposes and other purposes as capital contributions increasing the cost of the stock, which cost will then be compared with the amount realized when the stock is ultimately disposed of to determine gain or loss. *Harry E. Lutz*, 2 B. T. A. 484; *John G. Paxton*, 7 B. T. A. 92. Counsel for the Commissioner stated at the beginning of the hearing that the payments here in question were regarded as capital contributions of that character. The evidence fails to show that they were not.

Counsel for the petitioners, without actually stating that the petitioners were guilty of any wrongdoing, suggests that the payments in question might be regarded as a part of the total cost of meat purchased from United. These payments were in addition to the top price permitted by the O. P. A. laws and regulations which the partnership paid United for each pound of meat which it bought. If they are to be added as a part of the cost of the meat, then the total cost was in excess of a lawful price and it would be difficult to distinguish the transaction from a "black market" purchase. If that were true, then United really represented a scheme devised to avoid the letter of the law while at the same time violating its spirit. Im-

proper motives and illegal acts should not be lightly imputed, especially where another more logical interpretation of the testimony can be made.

Sackstein's testimony indicates that the payments were contributions of additional capital to make up for that lost by United in its operations. The dates of payment might indicate that the original capital sufficed for a while, after which contributions to capital became necessary. The contributions may have been used for the same purpose for which the original capital was used. Sackstein was told by Present that he could expect calls for additional capital contributions in proportion to meat purchased, but whether the actual payments were in proportion to meat purchased from United is not at all clear. However, capital contributions need not be in proportion to stockholdings. *Cambridge Apartment Building Corporation*, 44 B. T. A. 617. The record as a whole does not show how the amounts paid were determined to be due, how they were recorded on its books by United, or how they were used by United. A finding that these payments were ordinary and necessary expenses paid or incurred in carrying on the business during 1945 can not be made from the evidence.

The record does not justify any change in the determination of the Commissioner.

*Decisions will be entered for the respondent.*