ISIDOR DOBKIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20007.   Promulgated July 27, 1950.

*Jacob Rabkin. Esq.*, for the petitioner.
*Pershing W. Burgard, Esq.*, for the respondent.

**OPINION.**

ARUNDELL, *Judge:* Petitioner's contention that the funds which he paid in to Huguenot should be treated as loans so as to entitle him to a bad debt deduction on the corporation's liquidation runs squarely into our decision in *Edward G. Janeway*, 2 T. C. 197, affd., 147 Fed. (2d) 602.

Ordinarily contributions by stockholders to their corporations are regarded as capital contributions that increase the cost basis of their stock, thus affecting the determination of gain or loss on ultimate dispositions of the stock. *Harry Sackstein*, 14 T. C. 566. Especially is this true when the capital stock of the corporation is issued for a minimum or nominal amount and the contributions which the stockholders designate as loans are in direct proportion to their shareholdings. *Edward G. Janeway, supra.*

When the organizers of a new enterprise arbitrarily designate as loans the major portion of the funds they lay out in order to get the business established and under way, a strong inference arises that the entire amount paid in is a contribution to the corporation's capital and is placed at risk in the business. *Cohen* v. *Commissioner*, 148 Fed. (2d) 336; *Joseph B. Thomas*, 2 T. C. 193. The formal characterization as loans on the part of the controlling stockholders may be a relevant factor [1] but it should not be permitted to obscure the true substance of the transaction. *Sam Schnitzer*, 13 T. C. 43, 60.

Here petitioner and his three associates designated as capital stock $500 of the $7,000 that each paid in when they organized the corporation. The balance was declared to be a loan to the corporation. Despite the form of the transaction, however, each associate placed at risk the entire $7,000 that he paid in.

The apartment building which the corporation was organized to acquire had a purchase price of approximately $72,000. Because of $44,000 of outstanding first and second mortgages, approximately $28,000 was required to purchase the equity in the property. To acquire this equity, petitioner and each of his associates supplied one-quarter of the requisite funds. Of the $28,000 thus paid in at the organization of Huguenot, $26,000 was arbitrarily designated on the corporate books as "loans Payable" and the remaining $2,000 designated as capital stock. Taking into account the $44,000 of first and second mortgages, the effect of this designation was to give the corporation a debt structure of $70,000 as against a capital stock investment of $2,000, or a ratio of 35 to 1 of indebtedness to capital stock.[2]

This question of inadequate capitalization [3] is precisely the situation which the Supreme Court stated was not before it in *John Kelley Co.* v. *Commissioner*, 326 U. S. 521, 526:

As material amounts of capital were invested in stock, we need not consider the effect of extreme situations such as nominal stock investments and an obviously excessive debt structure.

---

[1] The determinative intent described in *Wilshire & Western Sandwiches, Inc.*, 175 Fed. (2d) 718, must necessarily be the objective intent disclosed by all the pertinent factors in the case and not the formal manifestation of intent declared by the taxpayer. Cf. *O'Neill* v. *Commissioner*, 170 Fed. (2d) 596, certiorari denied, 336 U. S. 937.

[2] In *Mullin Building Corp.*, 9 T. C. 350, a claimed indebtedness was rejected where, if allowed, a 29 to 1 debt to capital ratio would have resulted.

[3] Advances to corporations by controlling stockholders have been held capital contributions rather than indebtedness in several bankruptcy cases. *Arnold* v. *Phillips*, 117 Fed. (2d) 497 (CCA-5), certiorari denied, 313 U. S. 583. In *Pepper* v. *Litton*, 308 U. S. 295, 309–310, the Supreme Court said:

And so-called loans or advances by the dominant or controlling stockholder will be subordinated to claims of other creditors and thus treated in effect as capital contributions by the stockholder not only in the foregoing types of situations but also where the paid-in capital is purely nominal, the capital necessary for the scope and magnitude of the operations of the company being furnished by the stockholder as a loan.

See also Myron Semmel, Tax Consequences of Inadequate Capitalization, 48 Columbia Law Review 202.

When at a later date this Court was confronted with the above situation, we held that the capital there paid in must be treated as stock rather than indebtedness. *Swoby Corporation*, 9 T. C. 887.

The chances that the so-called loans would be repaid depended upon the earnings of the corporation. Because of the limited amount attributed to capital on the corporate books, any attempt by petitioner or one of his associates to enforce payment of the demand notes would probably have rendered the corporation insolvent, and such attempted payment would have come within the ban of New York stock corporation law [4] forbidding repayment of loans from stockholders when a corporation is insolvent or when its insolvency is imminent. There was no evidence that petitioner or any of his associates ever demanded repayment of their purported loans or that they ever contemplated such repayment unless the enterprise proved so profitable that they could withdraw the major part of their original investment without impairing the corporation's working capital. On the contrary, when deficiencies in working capital did arise, petitioner and his associates contributed additional funds and in so doing contributed in exactly equal proportions so that their investments in the corporation would remain equal.

While it is true that Huguenot paid interest on the so-called loans, these payments were derived principally from the rental income of the property. These payments could just as readily have been made as dividends had the original capital contributions been correctly designated. Since petitioner and his associates kept both the purported loans and their stockholdings in equal proportions, it was immaterial to them whether the payments were made as dividends or interest. Petitioner's own testimony supports the conclusion that the division of his contribution into two portions, capital stock and loan, was merely a bookkeeping transaction. On cross-examination, he admitted that he had no knowledge of how many shares the $500 recorded on the corporate books as his capital stock represented, nor could he state whether the stock had a par value or was no par stock. It is clear that petitioner intended to place at risk the entire $7,000 which he paid in to Huguenot.

From the facts before us, we can find no valid distinction which would warrant our arriving at a different result than we reached in the *Janeway* case, *supra*.

The respondent did not err in determining a deficiency.

*Decision will be entered under Rule 50.*

---

[4] McKinney's Consolidated Laws of New York Annotated, Book 58, Art. 8, § 15.