J. Terry Huffstutler v. Commissioner.
Huffstutler v. Commissioner
Docket No. 26046.
United States Tax Court
1953 Tax Ct. Memo LEXIS 18; 12 T.C.M. (CCH) 1422; T.C.M. (RIA) 54000; December 18, 1953
*18 Petitioner was the sole stockholder, president, and manager of a mining corporation known as the General Ore Company. In 1945, the corporation was liquidated and petitioner's $13,230 represented by loans and investment in the corporation became worthless. This $13,230 consisted of: (a) $3,000 in original capital contributions, (b) $5,500 in the form of loans but held to be capital contributions, and (c) $4,730 in loans. By 1945, petitioner had promoted and managed three corporations, including the General Ore Company, and had assisted in the promotion and management of a fourth. But other than the General Ore Company, petitioner had personally financed only one corporation and had loaned money to none except General Ore Company. Held, $8,500 represented worthless capital contributions which were deductible only as capital loss under Sec. 23(g), and $4,730 constituted a nonbusiness bad debt under the provisions of Sec. 23(k)(4). J. Terry Huffstutler, Esq., 1309 Roseland Drive, Birmingham 9, Ala., pro se. R. B. Wallace, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent has determined a deficiency of $3,585.05 in petitioner's income tax for the year 1945. The deficiency is due to three adjustments made by the respondent. The only one of these which presents issues for our decision is adjustment "(a) Worthless stock loss." This adjustment is explained in petitioner's amended petition as follows: "(a) In determining the taxable net income of the petitioner for the year 1945, the commissioner erroneously disallowed a deduction of $13,230 represented *20 by a $3,000.00 capital contribution to the solely owned corporation of petitioner and $10,230.00 in loans due the petitioner by said corporation, the worthlessness of both the capital contribution and the loans to the corporation being caused by liquidation of the corporation as a result of the theft of essential and vital machinery and equipment. The commissioner contends: "(1) that the $13,230 deducted by the petitioner represented either a long term capital loss resulting from worthlessness of petitioner's capital investment in his solely owned corporation and, therefore, the deduction would be limited to $1,000.00 in accordance with Section 117 (d) (2) of the Internal Revenue Code, or "(2) that, if $10,230.00 of the $13,230.00 was determined to be loans in lieu of a capital investment, the bad debt resulting therefrom would constitute a non-business bad debt within the meaning of Section 23 (k) (4) of the Internal Revenue Code and any loss from worthlessness thereof would be a short term capital loss, limited in its deduction to the extent provided in Section 117 (d) (2) of the Internal Revenue Code." Findings *21 of Fact Petitioner J. Terry Huffstutler is a resident of Birmingham, Alabama, and filed his individual tax return for the calendar year 1945 in the District of Alabama. On December 9, 1941, petitioner organized a corporation known as the General Ore Company for the purpose of engaging in the business of bauxite mining. Petitioner was the sole stockholder of this corporation at all times after its creation. Petitioner made the following advancements to the General Ore Company, either as capital contributions or as loans: December 12, 1941
$ 2,000.00
January 29, 1942
1,000.00
February 18, 1942
1,000.00
February 26, 1942
2,000.00
March 7, 1942
1,500.00
April 2, 1942
500.00
April 3, 1942
500.00
April 15, 1942
40.00
April 15, 1942
2,620.00
April 29, 1942
250.00
May 6, 1942
500.00
May 19, 1942
200.00
May 29, 1942
200.00
June 9, 1942
200.00
June 19, 1942
175.00
June 23, 1942
25.00
June 30, 1942
200.00
July 20, 1942
200.00
July 21, 1942
200.00
July 24, 1942
200.00
July 31, 1942
100.00
August 5, 1942
25.00
August 19, 1942
1,470.00
September 12, 1942
100.00
February 15, 1943
500.00
May 15, 1943
125.00
Total
$15,830.00
*22 Less: loans repaid by General Ore Company to petitioner: May 9, 1942
$250.00
May 9, 1942
500.00
September 2, 1942
200.00
September 2, 1942
200.00
September 12, 1942
200.00
October 19, 1942
175.00
May 15, 1943
25.00
January 18, 1943
200.00
May 15, 1943
200.00
May 15, 1943
25.00
March 1, 1943
500.00
August 13, 1943
125.00
2,600.00
Total capital contributions and
unpaid loans
$13,230.00
It is not disputed that of the foregoing advancements to the corporation those of December 12, 1941 and January 29, 1942, aggregating $3,000, were capital contributions to the General Ore Company. Petitioner contends that this $3,000 was all that he invested in the capital of the corporation, whereas respondent contends that the entire amount of the net payments of $13,230 represented capital contributions to the corporation. Within four months after the General Ore Company was incorporated petitioner advanced, in addition to the $3,000 conceded to be a capital investment, an additional $5,500 to the corporation, as follows: February 18, 1942
$1,000.00
February 26, 1942
2,000.00
March 7, 1942
1,500.00
April 2, 1942
500.00
April 3, 1942
500.00
*23 These amounts are included in the general table of advancements which we have given above. Each of the sums advanced was in the form of a check payable to the corporation. Upon each was a notation "For: Loan." On the date of each of the five advancements the General Ore Company executed a note to petitioner in the amount of the advancement. Each of the notes, as well as all subsequent notes executed to petitioner, were identical except for the principal amount and the date executed. The note executed on February 18, 1942, reads as follows: "$1,000.00 Birmingham, Alabama, February 18, 1942 "On or before ninety (90) days after date we promise to pay to the order of J. TERRY HUFFSTUTLER the sum of ONE THOUSAND DOLLARS ($1,000.00), for value received, with interest at the rate of eight per cent (8%) per annum until paid, payable at 1215 First National Building, Birmingham, Alabama. "GENERAL ORE COMPANY, INC. By J. Terry Huffstutler [S] President "ATTEST: [Seal] M. Pauline Montgomery Secretary" In April 1942, the authorized capital stock of the General Ore Company was increased from $5,000 to $25,000. The books of the General Ore Company were not introduced in evidence. *24 A subpoena duces tecum was served on petitioner, the custodian of the books, over a month prior to trial time ordering that the corporate books be brought into court. Petitioner testified that the books of the corporation were stored in his attic, but that he was unable to find them. Therefore, the following balance sheets of the General Ore Company are derived from the corporate tax returns for the years 1942, 1943, 1944, and 1945, which returns were prepared and signed by petitioner as president and treasurer of the corporation, and from the notes and checks described above: End of 1942
ASSETS
Cash, receivables and prepaid ex-
penses
$ 3,670.67
Depreciable assets
$12,635.67
[This item consists of
trucks and other equip-
ment needed in the
business of bauxite min-
ing] [1]
Less: Reserve for depre-
ciation
820.35
11,815.32
Total assets
$15,485.99
LIABILITIES
Accounts payable and accrued ex-
penses
$ 1,571.14
Bonds, notes and mortgages pay-
able: (a) With original maturity of less
than 1 year
6,872.20
[This item consists of: (a) the
unpaid balance on notes executed
to petitioner between April 29 and
August 5, 1942 for advancements -
$1,050; (b) note executed to peti-
tioner on August 19, 1942 - $1,470;
and (c) loans from outsiders -
$4,352.20]
Common stock
11,160.00
[This item consists of: (a) ad-
vancements by petitioner desig-
nated capital contributions -
$3,000; (b) advancements by peti-
tioner made on or before April 3,
1942 for which he received notes
- $5,500; and (c) notes executed
by the corporation to petitioner
on April 15, 1942 - $2,660]
Deficit
(4,117.35)
Total liabilities
$15,485.99
End of 1943
ASSETS
Cash, receivables
$ 6,216.92
Depreciable assets
$18,054.87
Less: Reserve for depre-
ciation
5,153.43
12,901.44
Total assets
$19,118.36
LIABILITIES
Accounts payable and accrued ex-
penses
$ 3,573.51
Common stock
13,230.00
[This item includes: (a) amounts
included under "Common stock"
at the end of 1942 - $11,160; (b)
unpaid balance on notes executed
to petitioner between April 29 and
August 5, 1942 for advancements - $600; and (c) note executed to
petitioner on August 19, 1942 -
$1,470. The amounts listed under
(b) and (c) were previously in-
cluded under "Bonds, notes and
mortgages payable."]
Surplus
2,314.85
Total liabilities
$19,118.36
End of 1944
ASSETS
Cash and notes and accounts receiv-
able
$10,865.48
Depreciable assets
$ 3,529.04
Less: Reserve for depre-
ciation
1,743.39
1,785.65
Total assets
$12,651.13
LIABILITIES
Accounts payable and accrued ex-
penses
$ 7,766.03
Bonds, notes, and mortgages pay-
able: (a) With original maturity of
less than 1 year
800.00
[Loans from outsiders]
Common stock
13,230.00
Deficit
(9,144.90)
Total liabilities
$12,651.13
End of 1945
ASSETS
Cash
$ 14.31
Notes and accounts receivable
9,548.27
Total assets
$ 9,562.58
LIABILITIES
Accounts payable and accrued ex-
penses
$ 5,743.40
Bonds, notes, and mortgages pay-
able: (a) With original maturity of
less than 1 year
1,525.00
[Loans from outsiders]
Common stock
13,230.00
Dficit
(10,935.82)
[Mining equipment having a de-
preciated value of $376.91 which
was stolen in 1945 is included in
the amount of the deficit.]
Total liabilities
$ 9,562.58
*25 In 1945, the General Ore Company was liquidated. The assets of the corporation, consisting almost exclusively of "Notes and accounts receivable," were evidently used to pay off amounts owing outsiders. Nothing was paid petitioner, either on the loans he had made to the corporation or in liquidation of his shares of stock in the corporation. Petitioner engaged in the following business activities during, and prior to, 1945: In 1940, he promoted, organized, but did not personally finance the Bauxite Company of Alabama. Petitioner served as president and general manager of the Bauxite Company of Alabama until he sold his interest in that corporation in November 1941. During 1941, petitioner assisted in promoting and organizing the Reynolds Ore Company and thereafter, until the corporation was liquidated in 1942, took part in the management. There is no evidence, however, that petitioner assisted in financing the Reynolds Ore Company, nor is there evidence disclosing the extent petitioner assisted in the promotion or participated in the management of the corporation. In December 1941, petitioner promoted, organized, and personally financed *26 the General Ore Company. So far as the evidence discloses, this was the first corporation personally financed by petitioner and the only corporation to which he loaned money. Petitioner was the president and general manager of the General Ore Company until its liquidation in 1945. All three of the corporations named above were in the business of bauxite mining. In October 1942, petitioner was licensed to practice law and opened an office. Thereafter, petitioner practiced law and managed the affairs of the General Ore Company. In December 1944, about the same time the General Ore Company ceased actual operations, petitioner promoted, organized, and financed the Dixie Broom Company to engage in the business of broom manufacturing. In 1945, petitioner practiced law, managed the affairs of the Dixie Broom Company and continued the liquidation of the General Ore Company. In 1945, the General Ore Company was forced into liquidation due to the theft of essential and vital machinery and equipment. Ultimate Findings The first $3,000 advanced by petitioner to the General Ore Company was a capital contribution. The $5,500 advanced by petitioner to the General Ore Company in the form *27 of loans on or before April 3, 1942, were capital contributions to the corporation. The remainder of the advancements which petitioner made to the General Ore Company which, after the deduction of payments, amounted to $4,730 represented loans which the petitioner had made to the corporation and were nonbusiness debts and were not incurred in or proximately related to any trade or business of the petitioner. Petitioner's entire investment, including nonbusiness loans in the General Ore Company, became worthless in 1945. Opinion BLACK, Judge: In his brief petitioner states the issues involved in this proceeding as follows: "1. May the petitioner, whose principal business, prior to and during the calendar tax year 1945, was the promotion, organization, financing and personal management of business enterprises, deduct in full, as a casualty loss, his capital contributions to a corporation, of which he was a stockholder, director, officer and general manager, in the amount of $3,000.00, and loans made by him to the corporation in the amount of $10,230.00, both of which became worthless in the calendar year 1945 by reason of the forced liquidation of the said corporation as a *28 result of the theft of essential and vital machinery and equipment belonging to said corporation? "2. May the petitioner, whose business, prior to and during the calendar tax year 1945, was the promotion, organization, financing and personal management of business enterprises, deduct in full, as business bad debts, loans made by him to a corporation, of which he was a stockholder, director, officer and general manager, in the amount of $10,230.00, which loans became worthless in the calendar tax year 1945 by reason of the forced liquidation of the said corporation as a result of the theft of essential and vital machinery and equipment belonging to the said corporation. "We shall dispose of these issues in their order." Issue 1. Claimed Casualty Loss As will be seen by reading Issue 1 as described in petitioner's brief, he is contending that his loss due to his shares of stock in General Ore Company becoming worthless in 1945 was a casualty loss under section 23(e)(3) and not a capital loss under the provisions of section 23(g) of the Code. Petitioner contends that his investment in the shares of stock of General Ore Company was $3,000, and that the remainder of his advances *29 to the corporation were loans. For reasons which we will discuss more at length later on, we think that $8,500 of his advancements to the corporation represented capital investments and that the remainder of such advancements represented loans. For the present, however, we will address ourselves to petitioner's contention that the cost of his investment in the stock of General Ore Company became worthless on account of the theft of some of its essential machinery. Section 23(e)(3) of the Code upon which petitioner relies with respect to this particular contention is printed in the margin. [2] With petitioner's contention that his loss was a theft loss, we cannot agree. Although assets having a depreciated cost of $376.91 were stolen from the General Ore Company in 1945, this was a loss sustained by the corporation, not by petitioner. It is true that petitioner's investment in the stock of General Ore Company became worthless in 1945, but that loss was due to the fact that when the corporation was liquidated in 1945, it did not have sufficient assets to pay the claims of its creditors and petitioner received nothing in liquidation of its stock. While it is true that the assets of General *30 Ore Company were diminished to the extent of the value of the stolen assets, the theft loss was deductible to the corporation and not to petitioner as an individual. Section 23(e)(3) of the Code relates to theft losses which have befallen an individual and these assets were not stolen from petitioner. Petitioner's contention urged in Issue 1 is not sustained. As we have found in our Findings of Fact, petitioner did have an investment of $8,500 in the stock of General Ore Company and that investment became worthless in 1945. We think this was a capital loss and is limited by the provisions of section 23(g) of the Code which are printed in the margin. [3]
*31 As we have already stated, petitioner contends that his capital investment in General Ore Company was $3,000, whereas respondent has determined in his deficiency notice and still contends in his brief that petitioner's capital investment in the corporation was $13,230. After a careful examination and consideration of all the evidence, documentary as well as petitioner's oral testimony, we have concluded that at the time of the liquidation of the corporation petitioner had $8,500 invested in it and had $4,730 unpaid loans due him from the corporation. Our Findings of Fact so state. The question as to whether advances to a corporation by the sole stockholder are actually contributions to capital or loans is essentially a question of fact upon which the taxpayer has the burden of proof. The status and nature of the transactions when they occurred is the ultimate question to be decided and the determinative intent is arrived at by the consideration of all relevant facts. Matthiessen v. Commissioner (C.A. 2), 194 Fed. (2d) 659, 661, affirming 16 T.C. 781. No presumption arises from the fact of sole ownership that the advances were capital contributions rather *32 than debts. Maloney v. Spencer (C.A. 9), 172 Fed. (2d) 638. Nor does the fact that notes were executed to the petitioner in the amount of the advances establish conclusively that they were debts. Matthiessen v. Commissioner, supra; Sam Schnitzer, 13 T.C. 43, 61, affd. (C.A. 9) 183 Fed. (2d) 70, certiorari denied 340 U.S. 911, citing Talbot Mills v. Commissioner, 326 U.S. 521. This Court, in Sam Schnitzer, supra, set forth some of the factors which should be considered in determining the parties' true intent, as follows: "Bookkeeping, form, and the parties' expressions of intent or character, the expectation of repayment, the relation of advances to stockholdings, and the adequacy of the corporate capital previously invested are among circumstances properly to be considered, for the parties formal designations of the advances are not conclusive, * * * but must yield to 'facts which even indirectly may give rise to inferences contradicting' them. * * *" When the General Ore Company was organized, petitioner, the sole stockholder, undoubtedly knew that an initial capital investment of far *33 more than $3,000 was needed for the corporation to begin operations. Cf. Sam Schnitzer, supra. Within four months the petitioner advanced $8,500 to the corporation. He labeled $3,000 capital contributions and $5,500 loans. In return for the latter he received notes executed by the corporation totaling $5,500. The entire $8,500 advanced in the first four months, plus $4,352 borrowed from outside sources, was needed to purchase tangible assets. During the first year the corporation spent $12,635.67 for "depreciable assets," consisting primarily of trucks and other equipment required in its business of bauxite mining. In 1943, the corporation spent $5,419.20 for additional equipment. Considering only $3,000 as capital contributions, the General Ore Company, one year after its incorporation, had a debt to capital ratio of approximately five to one. In Isidor Dobkin, 15 T.C. 31, 33, affd. (C.A. 2) 192 Fed. (2d) 392, this Court stated: "When the organizers of a new enterprise arbitrarily designate as loans the major portion of the funds they lay out in order to get the business established and under way, a strong inference arises that the entire *34 amount paid in is a contribution to the corporation's capital and is placed at risk in the business. Cohen v. Commissioner, 148 Fed. (2d) 336; Joseph B. Thomas, 2 T.C. 193. * * *" The debt to capital ratio of the General Ore Company was not nearly so great as in Isidor Dobkin, supra, and in other cases cited by respondent. Nor were the additional advancements which petitioner knew would be required as great as in Sam Schnitzer, supra. These facts, therefore, are not perhaps sufficient by themselves to sustain the conclusion that this $5,500 advanced by petitioner was actually a captial contribution. Cf. Earle v. W. J. Jones and Son, Inc., (C.A. 9) 200 Fed. (2d) 846. There are other factors, however, which tend to show that this $5,500 advancement was a capital contribution. Petitioner knew when the money was advanced that the 90-day notes upon which he relies could not possibly be repaid within the time specified. The notes could not be repaid until the corporation's earning more nearly equaled its total assets. The notes were never collected. Petitioner argues that the notes would have been repaid some day if a portion *35 of the corporation's assets had not been stolen in 1945. But in 1945, payment was already three years overdue. When the General Ore Company was liquidated in 1945, the corporation's assets totaled $9,562.58, nearly all of which were notes and accounts receivable. The amount due outsiders totaled $7,268.40, and, even if the assets were greatly overvalued, these outsiders presumably received a major portion of the amount due them. Petitioner, on the other hand, received nothing, which is inconsistent with the theory that he stood on the same footing as all other unsecured creditors. More important, however, is the manner in which petitioner treated this $5,500 advancement on the "balance sheets" shown on the corporate tax return for the year 1942. It was included under "Common stock," while other advancements made by petitioner in exactly the same manner, but at a later date, were included under "Bonds, notes, and mortgages payable" along with sums borrowed from outsiders. The $5,500 advanced by petitioner to the General Ore Company on or before June 3, 1942, was immediately put to the risk of the business in the same manner as the capital of a normal corporation. In light of all *36 of the foregoing facts, it is concluded that this advancement was intended to be and was, in fact, a capital contribution. And as we have already held, petitioner's loss on his capital contribution of $8,500 which became worthless in 1945, is limited by the provisions of section 23(g) of the Code. Issue 2. Is the Indebtedness Deductible in Full as a Business Debt or Limited by the Provisions of Section 23(k)(4) of the Code as a Nonbusiness Debt? Petitioner contends that the indebtedness which the corporation owed him was one which was incurred in his trade or business and, therefore, when it became worthless in 1945 that it was deductible in full under the provisions of section 23(k)(1) of the Code, printed in the margin. [4]
As we have already stated, respondent's primary contention is that all of petitioner's advancements to the corporation were capital investments and that *37 none of them were loans. In the alternative, however, he contends that if we should hold that any of the advancements made by petitioner to the corporation were loans, then such loans were nonbusiness debts within the meaning of the statute and that when such debts became worthless in 1945, the amount which petitioner can deduct by reason thereof is limited by the provisions of section 23(k)(4) of the Code, printed in the margin. [5]
The business of the General Ore Company was not the business of petitioner. See *38 Omaha Nat. Bank v. Commissioner (C.A. 8) 183 Fed. (2d) 899; nor does the petitioner so contend. He asserts, however, that his activities in promoting, organizing, financing, and managing corporations bring him within authority contained in Vincent C. Campbell, 11 T.C. 510, and Henry E. Sage, 15 T.C. 299. But, as this Court pointed out in Charles G. Berwind, 20 T.C. -, promulgated July 9, 1953: "The authority contained in such cases as Weldon D. Smith, 17 T.C. 135, revd. 203 Fed. (2d) 310 (Apr. 10, 1953), Henry E. Sage, 15 T.C. 299, and Vincent C. Campbell, 11 T.C. 510, is applicable only to the exceptional situations where the taxpayer's activities in promoting, financing, managing, and making loans to a number of corporations have been regarded as so extensive as to constitute a business separate and distinct from the business carried on by the corporations themselves. * * *" In 1945, petitioner had promoted and managed three corporations and had assisted, to an undisclosed extent, in the promotion and management of another. Petitioner may have shown that he was in the business of promoting *39 and managing corporations, but he has not shown that he was in the business of financing and making loans to corporations. In the case cited by the petitioner the taxpayer had financed and made loans to a number of businesses. Here, in so far as the evidence discloses, the petitioner had financed only two corporations and made loans to only one of the two. Activities of such limited scope do not constitute a trade or business within the meaning of the applicable revenue laws. Therefore, we conclude, that of petitioner's $13,230 here involved, $8,500 was a capital contribution which, when it became worthless, was deductible only under section 23(g) of the Code, and $4,730 constituted a nonbusiness bad debt under the provisions of section 23(k)(4) and is limited as there provided. Decision will be entered under Rule 50. Footnotes
1. All words within brackets are supplied.↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * *
(3) of property not connected with the trade or business, if the loss arises from * * * theft. * * *↩
3. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(g) Capital Losses. - (1) Limitation. - Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117. (2) Securities becoming worthless. - If any securities (as defined in paragraph (3) of this subsection) become worthless during the taxable year and are capital assets, the loss resulting therefrom shall, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets. (3) Definition of securities. - As used in this paragraph (2) of this subsection the term "securities" means (A) shares of stock in a corporation and (B) rights to subscribe for or to receive such shares. * * *↩
4. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - (1) General rule. - Debts which become worthless within the taxable year * * * in an amount not in excess of the part charged off within the taxable year * * *↩
5. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - * * *
Non-business Debts. - In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩