J. B. Reilly and Vera Reilly v. Commissioner.
Reilly v. Commissioner
Docket No. 46575.
United States Tax Court
T.C. Memo 1955-7; 1955 Tax Ct. Memo LEXIS 332; 14 T.C.M. (CCH) 22; T.C.M. (RIA) 55007; January 20, 1955
Clay Robbins, Esq., 210 West 7th Street, Los Angeles, Calif., for the petitioners. John J. Burke, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in the income tax of the petitioners for the year 1950 in the amount of $31,092.06. The only issue is whether the petitioners are entitled to a deduction of $35,000 in the year 1950 under the provisions of Section 23 of the Internal Revenue Code of 1939. Findings of Fact A stipulation of facts was filed, which is hereby incorporated herein by reference as part of our findings. Petitioners, husband and wife, are residents of Whittier, California. They filed a joint Federal income tax return for the year 1950, on the cash basis, with the collector of internal revenue for the sixth district of California at *333 Los Angeles, California. J. B. Reilly will hereinafter be referred to as the petitioner. In returns filed for the years 1949 and 1950 petitioner stated that his occupation was "manufacturer". In the spring of 1949, after returning from a trip to South America, the petitioner discussed with Benjamin F. Miller, Jr., his son-in-law, the business of selling advertising in the form of illuminated neon signs placed on the trunk lids of taxicabs. For approximately one year prior thereto Miller had been employed as a sales representative of the Taxi Neon Sales Company, which was engaged in that business. The petitioner became convinced that the business had possibilities and decided to organize a corporation to engage in it. Before doing so, however, he conferred with Miller and Hugh D. Pfeiffer with reference to the capital the corporation would need. It was estimated that the cost of a neon sign and a transformer for each taxicab would be $30; that the proposed corporation would be able to rent space on about 100 cabs; that it would begin to realize income from customers who desired to advertise their products as soon as the signs were manufactured and placed on the cabs; and that $5,000 *334 would be sufficient capital for the corporation. On September 12, 1949, Cab-Ad, Inc. was organized under the laws of the State of California. Its authorized capital stock consisted of 100,000 shares of common stock with a par value of $1 per share. On October 18, 1949, Cab-Ad, Inc. received permission from the Commissioner of Corporations of the State of California to issue 5,000 shares of its capital stock for cash. On the same date petitioner paid $5,000 to the corporation for these shares. At all times material herein these 5,000 shares constituted all the issued and outstanding stock of the corporation. The $5,000 paid to the corporation by the petitioner was the only asset the corporation owned at the time it commenced operations. At a meeting of the board of directors of Cab-Ad, Inc. on November 10, 1949, Benjamin F. Miller, Jr. was elected president, petitioner vice-president, and Hugh D. Pfeiffer secretary-treasurer. Before Cab-Ad, Inc. could commence operations the neon sign it proposed to use had to undergo certain tests and a permit to use signs on taxicabs had to be obtained from the Department of California Highway Patrol. This permit was received on December 19, 1949. While *335 awaiting this permit an attempt was made to sign up as many cabs as possible and a provisional rental was paid to the cab companies. Both before and after the permit was obtained, Cab-Ad, Inc. experienced difficulties with its neon signs. It was discovered that they were too heavy and damaged the trunk lids of the taxicabs, and that the neon tubing broke when a cab travelled over bad roads or when the lid was slammed shut by the driver. During the period of its operations Cab-Ad, Inc. expended the following amounts to improve its signs: 1949
September
$ 19.65
October
447.76
November
567.79
December
917.64
1950
January
1,149.02
February
1,481.83
March
3,745.19
April
4,123.12
May
2,964.67
June
553.14
July
None
August
549.51
September to December, incl.
None
At the time of the organization of Cab-Ad, Inc. its officers planned to confine its activities to the Los Angeles and Southern California areas and Miller thought he would be able to handle the solicitation of customers in these areas without employing any salesmen. Shortly thereafter, however, the corporation deemed it expedient to employ two salesmen and, on or before December 13, 1949, the *336 territory in which it operated was enlarged to include other parts of California, as well as Nevada. The signs and transformers used by Cab-Ad, Inc. were purchased from manufacturers. Each sign was about two and one half feet long and eighteen inches wide. Neon tubing furnished the light. An advertisement on paper was placed between two pieces of glass on each sign and the light reflected through the paper. The petitioner, as executive manager of the corporation, prescribed the policies to be followed and supervised operations. Pfeiffer maintained the records of the corporation showing income and disbursements. Miller contacted the cab companies and advertisers and also handled the installation and servicing of the signs. Merchants paid Cab-Ad, Inc. a weekly or monthly rental for space on the taxicabs carrying their advertising. The corporation paid a percentage of this rental to the taxicab companies and retained a percentage as remuneration for its services. The moenthly income and disbursements of Cab-Ad, Inc. during the period of its operations from September 1949 to December 1950, inclusive, were as follows: 1949
Income
Disbursements
September
$ 492.84
October
3,713.64
November
2,615.38
December
$ 54.75
2,107.26
1950
January
47.25
2,718.08
February
129.04
3,307.79
March
366.10
5,641.56
April
606.91
6,387.86
May
1,309.57
6,172.30
June
763.85
3,508.50
July
2,642.97
4,134.96
August
1,790.63
5,078.17
September
2,361.08
3,258.06
October
2,818.02
3,357.94
November
2,228.98
1,929.25
December
1,181.85
241.77
*337 No salaries or other compensation were paid to petitioner and the other officers of Cab-Ad, Inc. Benjamin J. Miller, Jr. did, however, receive "advances" from the corporation of $100 in November 1949, $76.07 in December 1949, and $320 in January 1950, which are included in disbursements for those months. He was to receive a percentage of the advertising sales as compensation for his services only if "the volume got sufficient". Cab-Ad, Inc. received from the petitioner cash in the following amounts which were entered on the books of the corporation on the following dates: November 4, 1949
$ 1,000.00
November 18, 1949
1,000.00
December 6, 1949
1,000.00
December 16, 1949
500.00
December 28, 1949
1,000.00
January 11, 1950
1,000.00
January 13, 1950
1,000.00
February 1, 1950
1,000.00
February 10, 1950
1,000.00
February 21, 1950
2,000.00
March 7, 1950
3,500.00
March 21, 1950
1,000.00
March 30, 1950
2,000.00
April 3, 1950
3,000.00
April 12, 1950
1,000.00
May 4, 1950
3,000.00
May 27, 1950
2,000.00
June 13, 1950
2,000.00
July 10, 1950
1,000.00
July 25, 1950
1,000.00
August 11, 1950
5,000.00
Total
$35,000.00 These transactions were *338 entered in the corporation's books in an account entitled "notes payable". No notes or other evidence of indebtedness were issued at the time the advances were made. Petitioner intended the advances to be loans to the corporation and expected them to be repaid from its earnings. The minutes of the directors' meeting of the corporation of December 13, 1949, refer to the first three items, to-wit, the cash received from petitioner on November 4, November 18 and December 6, 1949, as loans to the corporation and state that petitioner offered to lend the corporation up to $35,000 as and when needed. The following resolution was adopted by the directors at this meeting: "RESOLVED, that this corporation borrow from JOHN B. REILLY, as and when needed and from time to time, up to the sum of $35,000.00, and that the proper officers of this corporation be and they are hereby authorized to execute and deliver to JOHN B. REILLY, upon his request therefor, the promissory note of this corporation payable on demand, with interest at the rate of 6% per annum, to evidence advances so made by him." At the regular monthly meetings of the directors of Cab-Ad, Inc. for the months January to August *339 1950, inclusive, the president of the corporation reported that it "had borrowed" from the petitioner the amounts listed in the account entitled "notes payable". Benjamin F. Miller, Jr. served as an officer in the United States Army in World War II and was a reserve officer at the time of the outbreak of the Korean War. In August 1950, he was called for one day's active duty for the purpose of taking an examination to determine his physical fitness for active duty. He was then informed that he passed the examination. There had been differences of opinion in connection with the operation of the business between petitioner and his son-in-law, and, on September 5, 1950, petitioner effected a transfer of his 5,000 shares of stock of Cab-Ad, Inc., the total outstanding shares of the corporation, to his daughter Kathleen Miller and his son-in-law, Benjamin F. Miller, Jr., the husband of Kathleen Miller, as joint tenants, receiving in exchange therefor their joint note in the amount of $5,000, payable on demand. No payment of principal or interest has ever been made on this note, nor has any demand for any such payment ever been made. On September 5, 1950, petitioner resigned as vice-president *340 and director of Cab-Ad, Inc. and Hugh G. Pfeiffer resigned as secretary-treasurer. At a meeting of the board of directors on that date their resignations were accepted and it was "announced that Mr. Reilly had requested this corporation to execute a demand note evidencing the total amount of $35,000.00 loaned by him to the corporation * * *." A resolution was passed "that the proper officers of this corporation execute and deliver on behalf of this corporation the promissory note of this corporation in the amount of $35,000.00, payable on demand to John B. Reilly, or order, with interest at the rate of 6% per annum from date until paid, to evidence the advances made by John B. Reilly to the corporation from November 4, 1949." A promissory note for $35,000, dated September 5, 1950, was executed by Cab-Ad, Inc. and delivered to the petitioner. No payments of principal or interest were made on this note. In the latter part of November 1950, Benjamin F. Miller, Jr. received orders from the United States Army to report for active duty on January 1, 1951. At a special meeting of the board of directors of Cab-Ad, Inc. held on December 26, 1950, its president, Benjamin F. Miller, Jr., *341 announced that he had been called to active duty in the armed forces effective January 2, 1951; that the operations of the corporation had not been successful; that it had assets of $22,176.69 and liabilities in excess of $35,000; and that by reason of his inability to continue the active management of the business, it would be for the best interests of the stockholders and all persons interested that the corporation file a voluntary petition in bankruptcy. A resolution was adopted at this meeting authorizing and directing its officers to file or cause to be filed a voluntary petition in bankruptcy in the United States Court, Southern District of California, Central Division. This petition was filed on December 26, 1950, and Cab-Ad, Inc. was adjudicated a bankrupt on December 27, 1950. The liabilities of Cab-Ad, Inc. on December 27, 1950, exceeded its assets. Petitioner filed his proof of claim against Cab-Ad, Inc. in the Bankruptcy Court on January 9, 1951, and attached thereto the original promissory note of the corporation in the amount of $35,000. The claim stated that the consideration therefor was "Cash loan evidenced by promissory note of the corporation dated September 5, 1950, payable *342 on demand, with interest at 6% from date until paid." On October 1, 1951, petitioner received a check from the Trustee in Bankruptcy in the amount of $1,642.35 representing the total dividend paid on his claim. During the years 1949 and 1950 the petitioner devoted practically all of his working time, with the exception of the time he devoted to Cab-Ad, Inc., to The Fluid Packed Pump Company. This company was organized as a partnership in 1924 and sometime during the year 1950 became a corporation. The partnership was originally composed of petitioner and two or three other men. These men withdrew as partners in 1942 and thereafter the partnership was composed of petitioner and his wife. When the corporation was organized in 1950 petitioner and his wife became its sole stockholders. Petitioner made some loans to The Fluid Packed Pump Company in the early years of its operation as a partnership. These loans were repaid. The company became very successful and it now has assets of several million dollars. After Cab-Ad, Inc. was organized it used the offices of The Fluid Packed Pump Company at 1914 South Wilshire Boulevard, Los Angeles, California. No rental for the use of this office *343 was included in the disbursements made by Cab-Ad, Inc. for the period September 1949 to December 1950 inclusive. The amounts totalling $35,000 advanced by petitioner to Cab-Ad, Inc. during the years 1949 and 1950 were intended to be and were loans to the corporation and were not capital contributions. During the year 1950, or prior thereto, the petitioner was not engaged in the business of lending money to corporations or of promoting, organizing or financing them. His loss on his loans to Cab-Ad, Inc. was not incurred in any trade or business in which he was engaged. In the joint income tax return filed by petitioner and his wife for the year 1950, a loss deduction in the amount of $35,000 was claimed for "Bad debt loss on note receivable of Cabad, Inc." The claimed loss was disallowed by the respondent. Opinion RAUM, Judge: The petitioner contends that the advances totalling $35,000 represent loans to Cab-Ad, Inc. deductible by him in 1950 as business bad debts under Section 23(k)(1) of the Internal Revenue Code of 1939. We have found as a fact, in accordance with petitioner's contention, that the advances of $35,000 made by him to Cab-Ad, Inc. were loans and not capital *344 contributions. In reaching this conclusion we have not been unmindful that the characterization of the advances as loans is not conclusive of their true character and that the $35,000 advanced by petitioner substantially exceeded the capital of the corporation. Cf. Erard A. Matthiessen, 16 T.C. 781, affirmed, 194 Fed. (2d)659 (C.A. 2); Isidor Dobkin, 15 T.C. 31, affirmed, 192 Fed. (2d) 392 (C.A. 2). However, we think that the advances in this case were genuine loans. The testimony of petitioner and the other officers of the corporation that the advances were intended to be loans to be ultimately paid from corporate earnings, the consistent treatment of the advances as loans in the corporate books and minutes and in the bankruptcy proceedings, and the recognition of petitioner as a creditor entitled to the payment of a dividend by the Trustee in Bankruptcy, convince us that the advances were intended to be and were loans. Cf. Van Clief v. Commissioner, 135 Fed. (2d) 254, 256 (C.A. 3); Maloney v. Spencer, 172 Fed. (2d) 638, 641 (C.A. 9). Nevertheless, we must decide this case against petitioner because *345 of our conclusion, based upon the facts before us examined in the light of numerous authoritative decisions, that the debt did not constitute a business debt within the meaning of the statute. In support of his contention that the indebtedness resulting from the loans constituted a business debt the petitioner attempted to prove that he was engaged in the business of promoting and financing, or lending money, to corporations or other business enterprises. He testified that in 1929 or 1930 he invested in a corporation, which acquired a lease, originally held by a golf club, for the purpose of oil development, and that this venture was terminated in three years when it was discovered that no oil could be produced on the leased property; that sometime during the period 1930 to 1935 he made a loan of $5,000 on some ranch property in San Bernardino County; that in 1933 or 1934 he invested in the stock of a corporation organized to develop an alloy metal and also made loans to it which were repaid; that at some undisclosed time, apparently in the early period of the operations of the Fluid Packed Pump Company, he made loans to that company which were repaid from its earnings; that he made *346 loans to Cab-Ad, Inc. during the years 1949 and 1950; and that he did not have any business interest in which he was actively engaged in 1950 other than Cab-Ad, Inc. and the Fluid Packed Pump Company. From the testimony of the petitioner it appears that at various times during a period of approximately twenty years he participated in financing or lending money to five business ventures. Most, if not all of this activity, with the exception of that relating to Cab-Ad, Inc., took place more than fifteen years prior to 1950, and is not convincing evidence that petitioner was engaged in the trade or business of promoting and financing, or lending money to, corporations or other business enterprises at the time he made the loans to Cab-Ad, Inc. During that period his financing and lending activity was confined to Cab-Ad, Inc. and because of its limited scope did not constitute a trade or business. He devoted his working hours to the operations of the Fluid Packed Pump Company and Cab-Ad, Inc. In the latter corporation he was an officer, director and stockholder. Its business was not his business within the meaning of the statute ( Dalton v. Bowers, 287 U.S. 404; Burnet v. Clark, 287 U.S. 410), *347 and his activities in assisting in its operations do not clothe his loans with a business character. They were non-business loans and any loss sustained by him when they became worthless was a loss from a non-business bad debt. Cf. Commissioner v. Smith, 203 Fed. (2d) 310 (C.A. 2); Berwind v. Commissioner, 211 Fed. (2d) 575 (C.A. 3); Jan G. J. Boissevain, 17 T.C. 325; Estate of William P. Palmer, Jr., 17 T.C. 702; Hadwen C. Fuller, 21 T.C. 407; A. Kingsley Ferguson, 16 T.C. 1248. The petitioner has not proved that the non-business bad debt became worthless during the year 1950. Although Cab-Ad, Inc. was adjudged a bankrupt in 1950, and the parties have stipulated that its liabilities at that time exceeded its assets, there is nothing to show that the condition of the corporation at the end of that year was such as to justify the conclusion that the debt became wholly worthless in that year. Indeed, there was reason to believe that petitioner would be paid something on his loan; he filed a claim in January of 1951 and actually received $1,642.35 from the Trustee in Bankruptcy in October of that year. The *348 debt certainly had not become totally worthless in 1950 (cf. F. Sitterding, Jr., 20 T.C. 130, 136; W. A. Dallmeyer, 14 T.C. 1282, 1294), and since it was a non-business bad debt a deduction for partial worthlessness in 1950, even if otherwise allowable, is not available to petitioner under Section 23(k) of the Internal Revenue Code of 1939. [1] The respondent's action in disallowing the claimed deduction of $35,000 is, therefore, approved.
*349 Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. * * *
(k) Bad Debts. - (1) General Rule. - * * * when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. * * *
(4) Non-Business Debts. - * * * The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩