Shaker-Lee Theatre Co. v. Commissioner.
Shaker-Lee Theatre Co. v. Commissioner
Docket No. 49553.
United States Tax Court
T.C. Memo 1955-124; 1955 Tax Ct. Memo LEXIS 216; 14 T.C.M. (CCH) 452; T.C.M. (RIA) 55124; May 18, 1955
*216 During the taxable year, petitioner and another corporation each held 50 per cent of the outstanding capital stock of Kinmore, a corporation organized by them to build and operate a $100,000 motion picture theatre. They advanced equal sums to Kinmore. The theatre project was later abandoned. Petitioner designated $1,470 of the amount advanced by it as its capital investment and claimed a bad debt deduction of $10,632.35 on the grounds that that sum which it had advanced was a worthless and uncollectible loan. Held, all sums advanced by petitioner to Kinmore were capital contributions. Robert C. Coplan, Esq., for the petitioner. Theodore E. Davis, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies of $701.74 and $9,121.14 in declared value excess-profits tax and excess profits tax, respectively, determined against the petitioner for its fiscal year ended April 30, 1946. The respondent determined an over-assessment of $676.20 in income tax for such year. The only issue is whether the amount of $10,632.35 was a properly deductible bad debt under section 23(k)(1) of the 1939 Code, as claimed by petitioner *217 on its returns. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioner is a corporation with its principal place of business in Cleveland, Ohio. It filed its Federal income tax, declared value excess-profits tax, and excess profits tax returns for the fiscal year in issue with the collector of internal revenue for the eighteenth district of Ohio. For some years prior to and during the year in issue, petitioner operated three moving picture theatres in the City of Shaker Heights, Ohio, a suburb of Cleveland. In 1944, petitioner and the Fairmount Amusement Company (hereinafter referred to as Fairmount) learned that Warner Bros. was contemplating building a theatre in Shaker Heights. To avoid competition from that source, petitioner and Fairmount organized the Kinmore Amusement Company (hereinafter referred to as Kinmore) in December of that year, intending that it construct a theatre near the locality where they understood Warner Bros. planned to build and operate a theatre. Kinmore had an authorized capital of 500 common shares of no par value of which 100 shares were issued - 50 shares *218 to petitioner and 50 shares to Fairmount. During the year in issue, petitioner caused another company under the same management as itself - the Theatre Management Company (hereinafter referred to as Management) - to advance the sum of $13,635 to Kinmore; Fairmount advanced a like amount to Kinmore. The proposed cost of the theatre which Kinmore intended to build was $100,000. During the year in issue, Kinmore expended the sums advanced to it by petitioner (through Management) and Fairmount for a deposit on the lease for the land on which the theatre was to be constructed, for ground rent, for excavation, for engineering services, and other purposes. Warner Bros. completed a theatre near the site of Kinmore's proposed theatre before April 30, 1946. Petitioner and Fairmount thereupon decided that another theatre could not be profitably operated in that particular area, and abandoned the construction of the Kinmore Theatre. In March and April of 1946, petitioner reimbursed Management for the $13,635 which it had advanced to Kinmore. On April 30, 1946, petitioner's journal book showed the following entries: 1946
Debit
Credit
April 30 Capital Stock - Kinmore Amusement Co.
$ 1,470.00
Kinmore Amusement Co.
$ 1,470.00
To set up account to record investment in capital stock of Kin-
more Amusement Co.
April 30 Shaker - profit and loss on investments
$10,632.35
Kinmore Amusement Co.
$10,632.35
To charge off loss incurred by reason of payment for ground
rent and excavating expenses on land of Kinmore Amusement
Co., inasmuch as erection of a theatre on the site had to be
abandoned by reason of circumstances which would have made
such a venture extremely hazardous. The Shaker-Lee Theatre
Co. has a 48% interest in the company and the sum of $10,632.35
represents its proprtionate share of the expenses incurred and
abandoned as per detailed statement hereto attached.
KINMORE AMUSEMENT COMPANY
CAPITAL ACCOUNT
Deposit on Lease
$ 2,400.00
Deposit on Water
105.00
Legal Expense
300.00
Incorporation Expense
135.00
$2,940.00
1/2
$ 1,470.00
EXPENSES
Ground rent to April 30, 1946
$ 2,600.00
Taxes
436.55
Travel Expense
223.33
Insurance
301.50
Engineering
330.00
Excavating
12,587.50
Poles
34.71
Steel
31.57
Coal
342.37
Feldman
694.70
Norge
1,642.09
Dolan
1,616.97
Pictret
371.99
Hill
14.62
Shaker
21.81
Misc.
15.00
$21,264.71
1/2
$10,632.35
*219 Also, on April 30, 1946, petitioner's accounts receivable ledger, entitled "Kinmore Amusement Company," read as follows: Debit
Credit
March 12, 1946
CK12846
$10,000.00
April 9, 1946
CK12854
3,635.00
April 30, 1946
To Cap. Stock - K.A.
Acc't J106
$ 1,470.00
To P & L Invest. Acc't
(loss) J106
10,632.35
Balance
1,532.65
$13,635.00
$13,635.00
Petitioner received no security for the advances which it made in behalf of Kinmore, and there was no agreement as to when such advances would be repaid. The only monies which Kinmore had were the sums advanced to it by petitioner and Fairmount in equal amount. On its return for the fiscal year in issue, petitioner deducted the amount of $10,632.35 as a bad debt. The respondent disallowed such deduction, with the following explanation: "Under item 20 on page 1 of your income tax return for the fiscal year ended April 30, 1946, you claimed a deduction for bad debts of $10,632.35 alleged a chargeoff to represent an amount due from Kinmore Amusement Company. It is held that the bad debt deduction claimed in the amount of $10,632.35 is not allowable under section 23(k)(1) of the Internal Revenue Code *220 ." The amounts advanced by petitioner in behalf of Kinmore were capital contributions. Opinion RICE, Judge: The initial question raised here is whether the amount claimed by petitioner as a bad debt was, in fact, a debt at all. The petitioner attempts to dodge that question with an argument to the effect that the respondent, by use of the words "indebtedness" and "indebted" in the Stipulation of Facts filed herein, has conceded that the amount which petitioner advanced to Kinmore was, in fact, a loan. Petitioner's argument on brief is as follows: "Counsel for Respondent does not question the existence of a debt as noted in Stipulation No. 7 but merely questions the worthlessness or uncollectibility of the debt during the year 1946 * * *." It further argues in its reply brief: "Respondent's brief addresses itself solely to the proposition that the monies loaned to Kinmore Amusement Company by the Petitioner were capital contributions and not debts. Under the rules of this Court that issue has been unequivocably and completely disposed of by stipulation 7 of the Stipulations of Fact previously agreed upon by counsel and submitted in this case. Stipulation 7 reads as follows: *221 "'In March and April of 1946 the Petitioner paid $13,635.00 to the Theatre Management Company, thereby paying the indebtedness of the Kinmore Amusement Company to the Theatre Management Company and causing the Kinmore Amusement Company to become indebted to the Petitioner for the above mentioned amount.' (Italics ours. [Petitioner's]) "Rule 31(b) of the Tax Rules as revised to April 15, 1952 provides for written Stipulations of Fact. The Rule further provides that when facts are thus stipulated the Court 'will not receive evidence tending to qualify, change or contradict any fact properly introduced into the Record by stipulation.' (Italics ours. [Petitioner's]) The obvious and stated purpose of the Rule is to bind the Court and the parties to the facts as stipulated and to save the Court the time and inconvenience incident to determining facts from controverted testimony." We place no such interpretation on the mere use of the words "indebtedness" and "indebted" in paragraph 7 of the stipulation. It is apparent from the deficiency notice, the pleadings, the questions propounded by respondent's counsel at the hearing, and his argument on brief that he never conceded the fundamental *222 issue involved in this case of whether the advances which petitioner made in behalf of Kinmore were loans or were, in fact, capital contributions. Paragraph (4) of the petition alleged that the Commissioner erred when he determined that the amount claimed "was not a proper bad debt to be charged off during the fiscal year ending April 30, 1946." Paragraph (5) (a) of the petition alleged that the petitioner lent monies to Kinmore, and that such loans became "indisputably uncollectible" during the year in issue. Paragraphs (5) (b) and (c) of such petition read as follows: "(5) The facts upon which the Petitioner relies as the basis of this proceeding are as follows: * * *
"'(b) No part of the $10,632.35 claimed as a bad debt deduction as set forth in Paragraph (5) (a) above was an investment in the capital structure of Kinmore Amusement Co. "'(c) The Petitioner was one of the principal stockholders of Kinmore Amusement Co. but it at no time invested or intended to invest any sums of money as capital in Kinmore Amusement Co. other than $1,470.00 invested for 48% of the capital stock of Kinmore Amusement Co. The other principal stockholder of Kinmore Amusement Co. was The *223 Fairmount Amusement Co., an Ohio corporation, operating the Fairmount Theatre.'" Respondent denied the above allegations made in paragraphs 4 and 5 of the petition. The petitioner's counsel in his opening statement at the hearing said that "the point involved in this case, [is] whether this was a proper bad debt to be charged off." The respondent's brief is devoted exclusively to the issue as to whether the amounts advanced by petitioner were loans, which upon becoming worthless, would give rise to a bad debt, or were, as he argues, capital contributions. It is, therefore, apparent that the respondent did not, by the stipulation, concede that the advances were loans and we must reject petitioner's argument to the contrary. We are satisfied that respondent's argument that such advances were capital contributions is correct. We find no facts in this case which distinguish it from Hilbert L. Bair, 16 T.C. 90 (1951), affd. 199 Fed. (2d) 589 (C.A. 2, 1952); Erard A. Matthiessen, 16 T.C. 781 (1951), affd. 194 Fed. (2d) 659 (C.A. 2, 1952); Isidor Dobkin, 15 T.C. 31 (1950), affd. 192 Fed. (2d) 392 (C. *224 A. 2, 1951); Sam Schnitzer, 13 T.C. 43 (1949), affd. 183 Fed. (2d) 70 (C.A. 9, 1950), certiorari denied 340 U.S. 911 (1951); Joseph B. Thomas, 2 T.C. 193 (1943); and Edward G. Janeway, 2 T.C. 197 (1943), affd. 147 Fed. (2d) 602 (C.A. 2, 1945), wherein we held that similar advances in the guise of loans were, in fact, capital contributions. The petitioner here did not even go through the formality of requiring notes or demanding some security for the alleged loans or fixing a due date for repayment. It arbitrarily designated a portion of the total advances it made as a contribution to Kinmore's capital. The total advances by petitioner and Fairmount were in exactly equal proportions to their stock holdings in Kinmore. These facts give rise to a "strong inference * * * that the entire amount paid in is a contribution to the corporation's capital and is placed at risk in the business." Isidor Dobkin, supra, p. 33. Kinmore was organized for the purpose of constructing and operating a $100,000 motion picture theatre. The $1,470 which petitioner designated on its books as its one-half of Kinmore's *225 capital was inadequate to start such a venture; and we are satisfied that the entire amount which petitioner advanced was put at risk in the business, and was its capital investment therein. Decision will be entered for the respondent.